IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DOLORES CORDOVA,

     Plaintiff,

vs.                                     No. CIV 08-0681 JB/ACT

STATE OF NEW MEXICO TAXATION
AND REVENUE DEPARTMENT, PHILLIP
SALAZAR, individually and in his official
capacity, SHANNON BAXTER, and
LYNETTE TRUJILLO,

     Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary

Judgment, filed August 18, 2011 (Doc. 44).  The Court held a hearing on October 26, 2011.  The

primary issues are: (i) whether sovereign immunity prohibits Plaintiff Dolores Cordova's claim

under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 to 634; (ii) whether

the just-cause finding of Administrative Law Judge ("ALJ") R. Scott Summerfield in Cordova's

appeal of her dismissal to the New Mexico State Personnel Board ("NMSPB"), under the doctrine

of collateral estoppel, precludes a finding of discrimination in the federal case; (iii) whether

Defendants Phillip Salazar, Shannon Baxter, and Lynette Trujillo (collectively the "Individual

Defendants") are entitled to summary judgment on the discrimination and retaliation claims; (iv)

whether Defendant New Mexico Tax and Revenue Department ("NMTRD") is entitled to summary

judgment on Cordova's discrimination and retaliation claims; (v) whether qualified immunity bars

Cordova's 42 U.S.C. § 1983 claim against the Individual Defendants in their individual capacities;

and (vi) whether Cordova may maintain a cause of action for punitive damages against Salazar in his individual capacity.  The Court will grant in part and deny in part the Motion for Summary Judgment.  The Court finds that sovereign immunity bars Cordova's ADEA claim and will grant summary judgment in the Defendants' favor on the ADEA claims contained in Counts IV and VIII. The Supreme Court of the United States has held that, when analyzing the preclusive effect of administrative agency or administrative law judge decisions, federal district courts should determine whether that decision was reviewed in the state courts, and, if so, should base its preclusion determination on that state court opinion.  Here, the administrative decision was appealed to the First Judicial District Court, Santa Fe County, State of New Mexico.  The Court concludes that the state court decision does not address any of Cordova's discrimination claims or make any decision with respect to pretext, such that the state court decision would preclude Cordova's litigation of her Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e- to 2000e-17, and her Americans with Disabilities Act, 42 U.S.C. §§ 12201 to 12213 ("ADA"), discrimination claims.  Additionally, the Court finds that Judge Summerfield's opinion did not necessarily determine whether the Defendants' given reason for Cordova's discharge was pretextual, such that Cordova would be precluded from arguing her state-law discrimination claims.  The Court also finds that Cordova has demonstrated that there are genuine issues of material fact with respect to whether the Defendants' proffered legitimate, non-discriminatory reason is pretextual, such that summary judgment in the Defendants' favor on those Counts is inappropriate.  The Court will thus deny the Motion for Summary Judgment as it relates to collateral estoppel and the discrimination claims.  Because Cordova does not oppose the entry of summary judgment in the Defendants' favor Count X -- Violation of Civil Rights Under Color of State Law -- and Count XI -- Punitive Damages, the Court determines that summary

judgment in the Defendants' favor on those Counts is appropriate.

## FACTUAL BACKGROUND

While Cordova disputes several of the Defendants' allegedly undisputed facts,[1] most of the

material facts are undisputed.[2]

Cordova began working for the NMTRD as a Revenue Agent in July 2002, and, at the time

of her dismissal, Cordova worked as a Revenue Agent Supervisor.  See First Amended Complaint

----

[1]Many of Cordova's attempts to dispute the Defendants' allegedly undisputed facts assert additional facts.  The local rules provide:

> The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion.  Each additional fact must be lettered and refer with particularity to those portions of the record upon which the non-movant relies.

D.N.M.LR-Civ. 56.1.  Many of Cordova's asserted facts do not fit squarely into D.N.M.LR-Civ. 56.1, either as a fact which is responsive to the Memorandum or as an additional fact.  Cordova set forth her facts in response to the facts contained in the Memorandum of Law Supporting Defendants' Motion for Summary Judgment, filed August 18, 2011 (Doc. 45).  Upon careful examination, however, the Court has found that many of Cordova's facts are not responsive to the Defendants' facts and instead set forth additional information.  Although not as readily recognizable as additional facts as they might have been had Cordova followed the local rules, by lettering her additional facts, the Court believes that the Defendants had sufficient notice that Cordova was asserting these facts, because they were contained in her Response and most specifically refer to the portions of the record.  Accordingly, the Court will treat any additional facts that Cordova asserted in her Response as if Cordova had conformed to the local rules.

[2]At the hearing, Cordova conceded that she cannot dispute that the Defendants can establish that she acted wrongly or that the ALJ found that she committed misconduct and stated "[t]hat's undisputed."  Transcript of the Hearing at 12:18-21 (October 26, 2011)(Juarez)("Tr.").  The Court, responding to Cordova's concession, clarified that Cordova believed all of her claims survived, but that many of the facts would not be disputed because they were litigated in the state proceeding.  See Tr. at 13:7-10 (Court).  Cordova responded that the Court's summary of her position was correct. See Tr. at 13:12 (Juarez).  Later, Cordova agreed with the Court's statement that all of Judge Summerfield's legal conclusions and findings of fact are part of the record.  See Tr. at 13-19 (Court, Juarez).  Many of the facts that Cordova disputes in her Response are no longer in dispute, because Cordova conceded at the hearing that the conclusions of the state proceedings were undisputed.

for Employment Discrimination and Retaliation (Denial of Later Transfer and Wrongful Termination of Employment) and for Violation of Civil Rights Under Color of State Law ¶ 24, at 6, filed October 8, 2008 (Doc. 4)("First Amended Compl."); Memorandum of Law Supporting Defendants' Motion for Summary Judgment ¶ 1, at 3, filed August 18, 2011 (Doc. 45)("Motion for SJ")(setting forth this fact); Response by Plaintiff Dolores Cordova to Defendant State of New Mexico's Motion for Summary Judgment ¶ 1, at 3-4 (Doc. 47)("Response")(not disputing this fact). The NMTRD terminated Cordova's employment in January 2008. See First Amended Compl. ¶ 33, at 7; Motion for SJ ¶ 2, at 3 (setting forth this fact); Response ¶ 2, at 4 (not disputing this fact). Cordova appealed her termination, and the NMSPB held a two-day hearing in October of 2008. See Second Amended Recommended Decision of Administrative Law Judge R. Scott Summerfield, filed August 18, 2011 (Doc. 45-1)("Second Amended Recommended Decision"); Motion for SJ ¶ 3, at 3 (setting forth this fact); Response ¶ 3, at 4 (not disputing this fact). Following the issuance of a Recommended Decision, as well as an Amended Recommended Decision, Judge Summerfield, the ALJ the NMSPB designated to hear the case, on May 20, 2009, entered his Second Amended Recommended Decision regarding Cordova's appeal of her termination. See Second Amended Recommended Decision at 20; Motion for SJ ¶ 4, at 3-4 (setting forth this fact); Response ¶ 4, at 4-5 (not disputing this fact).

In the Second Amended Recommended Decision, Judge Summerfield concluded that the NMTRD had proved by a preponderance that, on August 17, 1988, Cordova was arrested on suspicion of driving while intoxicated. See Second Amended Recommended Decision ¶ 6, at 17; Motion for SJ ¶ 5(a), at 4 (setting forth this fact); Response ¶ 5(a), at 5 (not disputing this fact). Cordova was offered a breathalizer test, pursuant to New Mexico's implied-consent law, which she

refused, and which ultimately led to the revocation of her driver's license.  See Second Amended Recommended Decision ¶ 6, at 17; Motion for SJ ¶ 5(a), at 4 (setting forth this fact); Response ¶ 5(a), at 5 (not disputing this fact).  Judge Summerfield found that the NMTRD had proved by a preponderance of the evidence that, following her arrest, Cordova's driver's license was revoked for approximately twenty-two months.  See Second Amended Recommended Decision ¶ 7, at 18; Motion for SJ ¶ 5(b), at 4 (setting forth this fact).[3]

---

[3]Cordova disputes this fact, that Judge Summerfield found that the NMTRD had proven by a preponderance of the evidence that following her arrest, her driver's license was revoked for approximately twenty-two months, and asserts that she "applied for a new driver's license on June 21, 1990 and received one, which was one year that she did not have a driver's license."  Response ¶ 5(b), at 5.  In her Response, Cordova generally refers to her attached affidavit to refute the disputed facts.  See Affidavit of Dolores Cordova, filed September 6, 2011 (Doc. 47-1)("Affidavit").  Cordova also directs the Court to "See attached Division copy" to specifically dispute this fact.  Response ¶ 5(b), at 5.  It is unclear from Cordova's Response to what document she refers.  Cordova submitted: (i) her Affidavit; (ii) a letter from Cordova to Lynette Trujillo; (iii) case information for State of New Mexico v. Lowe, D-202-CR-200002576; and (iv) several sections of the NMTRD's Standards of Performance and Conduct Policy.  The Court's Courtroom Deputy Clerk, K'Aun Wild, also contacted Cordova's attorney, Santiago Juarez, in an attempt to determine to what document the Response referred and received no response from Mr. Juarez.  After examining those documents, the Court finds nothing that specifically controverts the Defendants' asserted fact that Judge Summerfield concluded that the NMTRD established that Cordova's license was in a revoked status for approximately twenty-two months.  Additionally, Cordova's Response does not appear to dispute that the Second Amended Recommended Decision concluded that Cordova's license was revoked for twenty-two months, rather she disputes the length of the revocation.  Nor can Cordova dispute this assertion, as the Second Amended Recommended Decision states: "The Department proves by a preponderance of the evidence Cordova's driver's license was in a revoked status for approximately 22 months."  Second Amended Recommended Decision ¶ 7, at 18.  D.N.M.LR-Civ. 56.1(b) states:

> The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does not exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b)(emphasis added).  Because Cordova does not direct the Court's attention

With respect to the events leading up to Cordova's termination, Judge Summerfield determined that the NMTRD proved that Cordova applied for a new position with the NMTRD in November 2007, and that she, pursuant to standard application procedures, completed an Employment Statement and an Interview Guide.  See Second Amended Recommended Decision ¶ 8, at 18; Motion for SJ ¶ 5(c), at 4 (setting forth this fact); Response ¶ 5(c), at 5-6 (not disputing this fact).  The NMTRD also established that, in her Interview Guide, Cordova responded, to question 10, that her driver's license had never been revoked and, to question 11, that she had never been arrested for Driving While Intoxicated ("DWI").  See Second Amended Recommended Decision ¶ 9, at 18; Motion for SJ ¶ 5(d), at 4 (setting forth this fact); Response ¶ 5(d), at 6 (not disputing this fact).  Judge Summerfield determined that Cordova's responses were not honest, truthful, and accurate such that they constituted a falsification in violation of Section 3.29 of the NMTRD's Standards of Performance and Conduct Policy.  See Second Amended Recommended Decision ¶ 10, at 18; Motion for SJ ¶ 5(e), at 4-5 (setting forth this fact).[4]  Cordova's failure to accurately

_____

to any evidence that controverts the assertion that Judge Summerfield determined that Cordova's license was revoked for 22 months, the Court will deem the Defendants' assertion admitted. See D.N.M.LR-Civ. 56.1(b).

[4]Cordova disputes this fact, that Judge Summerfield determined that Cordova's responses were not honest, truthful, and accurate such that they constituted a falsification in violation of Section 3.29 of the NMTRD's Standards of Performance and Conduct Policy, and asserts that she does not believe she is untruthful.  See Response ¶ 5(e), at 6-7 (disputing this fact).  Cordova maintains that she understood questions 10 and 11 to be asking for convictions, not charges. See Response ¶ 5(e), at 6-7.  Cordova also alleges that the NMTRD did no more than reprimand male employees for similar conduct.  See Response ¶ 5(e), at 6-7.  To controvert the Defendants' asserted fact, Cordova cites her letter to Lynette Trujillo in response to the Notice of Contemplated Action.  See Letter from Dolores Cordova to Lynette Trujillo at 1-2, filed September 6, 2011 (Doc. 47-2)("Letter").  In the Letter, Dolores informed Trujillo that she misunderstood the questions, and that several male employees committed similar or worse conduct without facing dismissal.  See Letter at 1-2.  Cordova does not appear to dispute that the Second Amended Recommended Decision states that Cordova was untruthful; rather, Cordova asserts that she was honest.  Because Cordova

complete the Interview Guide, as the Interview Guide, Employment Statement, and Section 3.29 of

the Standards of Performance and Conduct warn, was determined to constitute misconduct. <u>See</u>

Second Amended Recommended Decision ¶ 13, at 18; Motion for SJ ¶ 5(f), at 5 (setting forth this

fact).[5]   After concluding that Cordova's actions constituted misconduct, Judge Summerfield

determined that the NMTRD had just cause to discipline Cordova.   <u>See</u> Second Amended

Recommended Decision ¶ 14, at 19; Motion for SJ ¶ 5(g), at 5 (setting forth this fact).[6]   Furthermore,

Judge Summerfield found that the NMTRD had just cause to dismiss Cordova and that her dismissal

was appropriate.   <u>See</u> Second Amended Recommended Decision ¶¶ 22-23, at 19-20; Motion for SJ

¶¶ 5(h)-(i) (setting forth this fact).[7]

────────────────────

does not direct the Court's attention to any evidence that specifically controverts the assertion that
Judge Summerfield determined that Cordova was dishonest, the Court will deem the fact admitted.
<u>See</u> D.N.M.LR-Civ. 56.1(b).

[5]Cordova disputes this fact -- that her failure to accurately complete the Interview Guide, as
the Interview Guide, Employment Statement, and Section 3.29 of the Standards of Performance and
Conduct warn, was determined to constitute misconduct -- and asserts: "Although the Administrative
Law Judge made this finding, it is not an accurate reflection of the plain letter of the Standards of
Performance and Conduct Policy, Section 3.29." <u>See</u> Response ¶ 5(f), at 7.  Cordova admits that
Judge Summerfield made this finding, which is all that the Defendants assert.  There is, therefore,
no dispute whether the Second Amended Recommended Decision concludes that Cordova's failure
to complete the form accurately constituted misconduct.  Because Cordova does not direct the Court
to any evidence that specifically controverts the Defendants' assertion about the contents of Judge
Summerfield's Second Amended Recommended Decision, the Court will deem this fact admitted.
<u>See</u> D.N.M.LR-Civ. 56.1.

[6]Cordova disputes this fact -- that, after concluding that Cordova's actions constituted
misconduct, Judge Summerfield determined that the NMTRD had just cause to dismiss Cordova --
and asserts that "[t]he administrative law judge made this finding, but Plaintiff does [not] believe
that she was untruthful." <u>See</u> Response ¶5(g), at 7.  Because Cordova admits the fact that Judge
Summerfield made this finding and because there is no dispute that the Second Amended
Recommended Decision found that there was just cause to discipline Cordova, the Court will deem
this fact admitted.  <u>See</u> D.N.M.LR-Civ. 56.1.

[7]Cordova disputes this fact that Judge Summerfield found that the NMTRD had just cause
to dismiss Cordova and that dismissal was appropriate.  <u>See</u> Response ¶¶ 5(h)-(i), at 8-9.  Cordova

The NMSPB issued a Final Decision[8] that amended Judge Summerfield's findings of fact and conclusions of law in several ways.  See New Mexico State Personnel Board Final Decision at 1-2, filed August 18, 2011 (Doc. 45-2)("Final Decision"); Motion for SJ ¶ 6, at 5 (setting forth this fact);  Response ¶ 6, at 9 (not disputing this fact).  The NMTRD appealed the NMSPB's Final Decision to the First Judicial District Court, Santa Fe County, State of New Mexico which reversed the NMSPB's Final Decision, because it was "arbitrary, capricious, not based on substantial evidence, and not in accordance with law."  N.M. Taxation and Revenue Dep't v. Cordova, Case

---

asserts that "Plaintiff doesn't believe that she was untruthful," that "there were males that were just reprimanded for similar situations," and that "[t]he decision to terminate Plaintiff was inappropriate as Plaintiff was never reprimanded, her annual reviews were exemplary."  Response ¶¶ 5(h)-(i).  Again, Cordova does not specifically controvert the Defendants' asserted fact that Judge Summerfield found just cause to dismiss Cordova and that her dismissal was appropriate.  Instead, Cordova disputes the accuracy of those findings, arguing that she was treated differently from similarly situated persons and that dismissal was inappropriate.  Whether Cordova was treated differently than similarly situated persons and whether Judge Summerfield should have reached these conclusions are legal arguments, and the Court will not address them at this time, but will consider them in its legal analysis.  See Ruiz v. City of Brush, No. 05-897, 2006 WL 1816454, at *4 (D. Colo. June 30, 2006)("[T]he 'sole purpose' of the required statements of and responses to undisputed material facts is 'to establish facts and determine which of them are in dispute[;] [l]egal argument should be reserved for separate portions of the brief.'")(citation omitted).  Because Cordova admits the fact that Judge Summerfield found that the NMTRD had just cause to dismiss Cordova and that dismissal was appropriate, and because there is no dispute that the Second Amended Recommended Decision found that there was just cause to dismiss Cordova and that her termination was appropriate, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1.

[8]The role of an ALJ in the course of an employee's appeal of their dismissal is similar to the role of a magistrate judge in federal court.  The New Mexico Personnel Act provides:

> The board may designate a hearing officer who may be a member or any qualified state employee to preside over and take evidence at any hearing held pursuant to this section.  The hearing officer shall prepare and submit to the board a summary of the evidence taken at the hearing and proposed findings of fact.  The board shall render a decision, which include findings of fact and conclusions of law.

N.M.S.A. 1978, § 10-9-18E.

No. D-101-CV-2009-02811, Decision ¶ 9, at 4 (dated January 5, 2011) filed August 18, 2011 (Doc.

45-3)("First Judicial District Decision"); Motion for SJ ¶ 7, at 6 (setting forth this fact).[9]  On August

2, 2011, Judgment on the Mandate was entered in the First Judicial District Court case, which stated

that no further proceedings are necessary.  See N.M. Taxation and Revenue Dep't v. Cordova, Case

No. D-101-CV-2009-02811, Judgment on Mandate (dated August 2, 2011), filed August 18, 2011

(Doc. 45-3)("First Judicial District Judgment"); Motion for SJ ¶ 8, at 6 (setting forth this fact);

Response ¶ 8, at 10 (not disputing this fact).

At the time Cordova was suspended, the NMTRD also employed Jose Martinez, whose

license was suspended.  See Affidavit of Dolores Cordova ¶ 5(d), at 4, filed September 6, 2011

(Doc. 47-1)("Affidavit"); Response ¶ 5(d), at 6 (setting forth this fact).[10]  The NMTRD gave

---

[9]Cordova disputes this fact, that the NMTRD appealed the NMSPB's Final Decision to state court, which reversed the NMSPB's Final Decision, and asserts: "Judge Raymond Ortiz made these findings, but like the Administrative Law Judge, he had no jurisdiction over the discrimination related components of Plaintiff's case."  Response ¶ 7, at 9-10.  Cordova again admits the Defendants' asserted fact, that the First Judicial District Decision reversed the NMSPB's Final Decision.  The Court will not address Cordova's legal argument that the First Judicial District Decision had no jurisdiction over her claims of discrimination at this time, but will consider them in its legal analysis section.  See Ruiz v. City of Brush, 2006 WL 1816454, at *4.  Because Cordova does not specifically controvert the Defendants' asserted fact that the NMTRD appealed the NMSPB's Final Decision to state court, which reversed the NMSPB's Final Decision, the Court will deem the fact that the First Judicial District Decision reversed the NMSPB's Final Decision admitted.  See D.N.M.LR-Civ. 56.1.

[10]In their Reply, the Defendants do not refer to Cordova's asserted fact that the NMTRD also employed Martinez and that his license was suspended.  See Reply at 1-11.  Although Cordova listed this fact in an attempt to dispute the Defendants' asserted undisputed facts, that the NMTRD proved by a preponderance of the evidence that Cordova completed her Interview Guide to reflect that her driver's license had never been revoked and that she had never been arrested for driving while intoxicated, the Court views Cordova's assertion about Martinez as an additional fact.  Local rule D.N.M.LR-Civ. 56.1(b) provides that all "material facts set forth in the Response will be deemed undisputed unless specifically controverted."  D.N.M.LR-Civ. 56.1(b).  Because the Defendants did not specifically controvert the asserted fact that the NMTRD also employed Martinez and that his license was suspended, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

Martinez two weeks to resolve this issue, despite the fact that the New Mexico Department of Motor

Vehicles treats suspensions and revocations similarly.  See Affidavit ¶ 5(d), at 4; Response ¶ 5(d),

at 6 (setting forth this fact).[11]   The NMTRD reprimanded males in similar situations, rather than

discharge them, including: Cameron Hull, Jerry Velasquez, Edwin Bush, and Paul Lujan.  See Letter

at 2; Affidavit ¶ 5(e), at 5; Response ¶ 5(e), at 6-7 (setting forth this fact).[12]   Furthermore, Salazar,

the decision-maker in Cordova's case, testified before Judge Summerfield that males involved in

similar situations were not terminated.   See Second Amended Recommended Decision at 24;

Affidavit ¶ 5(g), at 6; Response ¶ 5(g), at 7-8 (setting forth this fact).[13]   Kimberly Lowe, an Anglo

_____

[11]In their Reply, the Defendants do not refer to Cordova's asserted fact that the NMTRD gave Martinez two weeks to resolve his license suspension.  See Reply at 1-11.  Although Cordova lists this fact in an attempt to dispute the Defendants' asserted undisputed facts, that the NMTRD proved by a preponderance of the evidence that Cordova completed her Interview Guide to reflect that her driver's license had never been revoked and that she had never been arrested for driving while intoxicated, the Court views Cordova's assertion about Martinez as an additional fact.  Local rule D.N.M.LR-Civ. 56.1(b) provides that all "material facts set forth in the Response will be deemed undisputed unless specifically controverted."  D.N.M.LR-Civ. 56.1(b).  Because the Defendants did not specifically controvert the asserted fact that the NMTRD gave Martinez two weeks to resolve his license suspension, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[12]In their Reply, the Defendants do not refer to Cordova's asserted fact that the NMTRD reprimanded males in similar situations rather than discharge them.  See Reply at 1-11.  Although Cordova lists this fact in an attempt to dispute the Defendants' asserted undisputed facts that the NMTRD proved by a preponderance of the evidence that Cordova's responses were not honest, truthful, and accurate responses, the Court views Cordova's assertion that male employees were not dismissed as an additional fact.  Local rule D.N.M.LR-Civ. 56.1(b) provides that all "material facts set forth in the Response will be deemed undisputed unless specifically controverted."  D.N.M.LR-Civ. 56.1(b).  Because the Defendants did not specifically controvert the asserted fact that the NMTRD only reprimanded males in similar situations, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[13]In their Reply, the Defendants do not refer to Cordova's asserted fact that Salazar testified before Judge Summerfield that males involved in similar situations were not terminated.  See Reply at 1-11.  Although Cordova listed this fact in an attempt to dispute the Defendants' asserted undisputed facts that the NMTRD had just cause to impose discipline on Cordova based upon her misconduct, the Court views Cordova's assertion that Salazar testified that other employees were not discharged as an additional fact.  Local rule D.N.M.LR-Civ. 56.1(b) provides that all "material

female, was given the position for which Cordova applied, and in 2000, Lowe was charged with a

felony for possession of cocaine.  See New Mexico v. Lowe, D-202-CR-200002576, Case Detail,

filed September 6, 2011 (Doc. 47-3)("Case Detail"); Affidavit ¶ 5(h), at 6; Response ¶ 5(h), at 8

(setting forth this fact).[14]   When the NMTRD caught Edwin Bush, a Senior Revenue Agent,

falsifying documents, Bush was demoted, but not terminated like Cordova.  See Affidavit ¶ 5(h), at

7; Response ¶ 5(h), at 8 (setting forth this fact).[15]   Cordova was never reprimanded before her

---

facts set forth in the Response will be deemed undisputed unless specifically controverted."
D.N.M.LR-Civ. 56.1(b).  Because the Defendants did not specifically controvert the asserted fact
that Salazar testified before Judge Summerfield that males involved in similar situations were not
terminated, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[14] In their Reply, the Defendants do not refer to Cordova's asserted facts that Kimberly
Lowe, an Anglo female, was given the position for which Cordova applied, and that in 2000 Lowe
was charged with a felony for possession of cocaine.  See Reply at 1-11.  Although Cordova listed
these facts in an attempt to dispute the Defendants' asserted undisputed facts, the Court views this
as an assertion of an additional fact.  Local rule D.N.M.LR-Civ. 56.1(b) provides that all "material
facts set forth in the Response will be deemed undisputed unless specifically controverted."
D.N.M.LR-Civ. 56.1(b).  Although Cordova's asserted fact was that Lowe, an Anglo female and
convicted felon, replaced her, and the Defendants introduced no evidence to dispute this fact, the
citation to the Case Detail for New Mexico v. Lowe does not support that the assertion that Lowe
was a convicted felon.  The Case Detail establishes that Lowe was charged with possession of
cocaine and felony possession of a controlled substance, but that the prosecution filed a nolle
prosequi on January 24, 2008 when Lowe was accepted into the pre-prosecution probation program.
See Case Detail at 1.  Local rule D.N.M.LR-Civ. 56.1(b) provides that each additional fact set out
in the response must "refer with particularity to those portions of the record upon which the non-
movant relies."  D.N.M.LR-Civ. 56.1(b).  Because the record which Cordova cites does not support
the asserted fact that Lowe is a convicted felon, the Court will modify this fact.  Because the
Defendants did not specifically controvert the modified fact that Lowe, an Anglo female, was given
the position for which Cordova applied, and that in 2000 Lowe was charged with a felony for
possession of cocaine, the Court will deem these facts admitted.  See D.N.M.LR-Civ. 56.1(b).

[15] In their Reply, the Defendants do not refer to Cordova's asserted fact, that when the
NMTRD caught Bush, a Senior Revenue Agent, falsifying documents, Bush was demoted, but not
terminated like Cordova.  See Reply at 1-11.  Although Cordova listed this fact in an attempt to
dispute the Defendants' asserted undisputed facts, the Court views this fact as an assertion of an
additional fact.  Local rule D.N.M.LR-Civ. 56.1(b) provides that all "material facts set forth in the
Response will be deemed undisputed unless specifically controverted."  D.N.M.LR-Civ. 56.1(b).
Because the Defendants did not specifically controvert the asserted fact, that when the NMTRD

termination, and her annual reviews were exemplary.  See Affidavit ¶ 5(i), at 7; Response ¶ 5(i), at 9 (setting forth this fact).[16]

**PROCEDURAL BACKGROUND**

Cordova filed her Complaint on July 22, 2008.  See Complaint for Employment Discrimination and Retaliation (Denial of Lateral Transfer and Wrongful Termination of Employment) and for Violation of Civil Rights Under Color of State Law, filed July 22, 2008 (Doc. 1)("Complaint").  On October 8, 2008, Cordova filed her First Amended Complaint.  See First Amended Compl. at 9.  The First Amended Complaint contains eleven counts: (i) Sex Discrimination -- Denial of Lateral Transfer; (ii) Race/National Origin Discrimination -- Denial of Lateral Transfer; (iii) Disability Discrimination -- Denial of Lateral Transfer; (iv) Age Discrimination -- Denial of Lateral Transfer; (v) Sex Discrimination -- Wrongful Discharge from Employment; (vi) National Origin Discrimination -- Wrongful Discharge from Employment; (vii) Disability Discrimination -- Wrongful Discharge from Employment; (viii) Age Discrimination -- Wrongful Discharge from Employment; (ix) Retaliation/Reprisal -- Wrongful Discharge from Employment; (x) Violation of Civil Rights Under Color of State Law; and (xi) Punitive Damages. See First Amended Compl. at 9-15.  Cordova argues that she was treated differently than similarly

caught Edwin Bush, a Senior Revenue Agent, falsifying documents, Bush was demoted, but not terminated like Cordova, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[16]In their Reply, the Defendants do not refer to Cordova's asserted fact that Cordova was never reprimanded and her annual reviews were exemplary.  See Reply at 1-11.  Although Cordova listed this fact in an attempt to dispute the Defendants' asserted undisputed facts, the Court views this as an assertion of an additional fact.  Local rule D.N.M.LR-Civ. 56.1(b) provides that all "material facts set forth in the Response will be deemed undisputed unless specifically controverted." D.N.M.LR-Civ. 56.1(b).  Because the Defendants did not specifically controvert the asserted fact, that Cordova was never reprimanded and her annual reviews were exemplary, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

situated male employees, similarly-situated non-disabled employees, similarly situated non-Hispanic employees, and similarly-situated employees without a history of filing complaints with the Equal Employment Opportunity Commission ("EEOC").  See First Amended Compl. ¶¶ 37-40, at 8-9.

The Defendants responded with their Defendants' Answer to First Amended Complaint for Employment Discrimination and Retaliation (Denial of Lateral Transfer and Wrongful Termination of Employment) and for Violation of Civil Rights Under Color of State Law, filed December 15, 2008 (Doc. 9)("Answer").  The Defendants denied the allegations and asserted several affirmative defenses: (i) that Cordova failed to state a claim upon which relief may be granted; (ii) that Cordova failed to exhaust her administrative remedies on all claims; (iii) that Cordova's claims were premature because of pending administrative proceedings; (iv) that the NMTRD had legitimate, non-discriminatory reasons for all of their employment related decisions; (v) that all of the Individual Defendants acted within the scope of their official duties; (vi) that the Individual Defendants are entitled to qualified immunity; (vii) that the Individual Defendants acted reasonably and in good faith; (viii) that Cordova violated NMTRD Standards of Performance and Conduct Policy, Section 3.29; (ix) that the sole and proximate cause of any damages was Cordova's own intentional, reckless, unlawful and/or negligent acts; (x) that the NMTRD treated Cordova in the same manner as others who were similarly situated and who were not members of Cordova's protected classes; (xi) that Cordova failed to mitigate her damages, if any; (xii) that the Individual Defendants cannot be held liable under Title VII; (xiii) that damages under Title VII are limited and do not include punitive damages against Defendants; and (xiv) that Cordova's state claims are subject to the New Mexico Tort Claims Act, N.M.S.A. 1978, §§ 41-4-1 to -30.  See Answer at 8-9.

Because the NMTRD appealed the NMSPB's Final Decision on July 28, 2009, the

Defendants filed Defendants' Unopposed Motion to Stay Discovery Pending Appeal, filed July 2, 2009 (Doc. 33)("Motion to Stay").  The Court granted the Motion to Stay and ordered the parties to provide the Court with status updates every ninety days.  See Order Granting Defendants' Unopposed Motion to Stay Discovery Pending Appeal at 1, filed November 5, 2009 (Doc. 37)("Order").

On August 18, 2011, the Defendants filed their Motion for Summary Judgment.  The Defendants argue that the Second Amended Recommended Decision precludes Cordova from litigating her claims in federal court.  See Motion for SJ at 7.  The Defendants contend that, under the Tenth Circuit's standard for collateral estoppel established in Salguero v. City of Clovis, 366 F.3d 1168 (10th Cir. 2004), Judge Summerfield's opinion should receive the same preclusive effect that it would receive in state court.  See Motion for SJ at 7.  Applying New Mexico's collateral estoppel rules, the Defendants assert that: (i) Cordova was a party to the NMSPB hearing; (ii) the hearing and the action in this Court involve the same ultimate issues of fact; and (iii) that those ultimate issues were actually litigated and necessarily determined in the NMSPB hearing.  See Motion for SJ at 10.  The Defendants also argue that, under the burden-shifting analysis for Title VII, the ADEA, the ADA, and the New Mexico Human Rights Act, N.M.S.A. 1978, §§ 28-1-1 to -15 ("NMHRA"), Cordova cannot meet her burden.  See Motion for SJ at 12.  The Defendants maintain that, even assuming for the sake of argument that Cordova could set forth a prima facie case, the Second Amended Recommended Decision conclusively establishes that the NMTRD has a legitimate, non-discriminatory reason for the adverse employment action, because Judge Summerfield found that dismissal was appropriate.  See Motion for SJ at 12-13.

Moreover, the Defendants argue that sovereign immunity shields the NMTRD from claims

-14-

under the ADEA.  See Motion for SJ at 13.  They also assert that Cordova cannot maintain any cause

of action against the Individual Defendants, because they are entitled to qualified immunity.  See

Motion for SJ at 13-16.  The Defendants argue that, even if the Individual Defendants are not

entitled to qualified immunity, the Second Amended Recommended Decision precludes a showing

that the Individual Defendants violated Cordova's civil rights under color of state law.  See Motion

for SJ at 16.  Finally, the Defendants assert that Cordova cannot maintain any cause of action for

punitive damages, because Tenth Circuit precedent establishes that a "punitive damage claim is not

an independent cause of action or issue separate from the balance of a plaintiff's case."  Motion for

SJ at 17.

On September 6, 2011, Cordova filed her Response to the Motion for Summary Judgment.

Cordova disputed several of the Defendants' undisputed material facts.  See Response ¶¶ 5(b),

5(e)-(i), 7, at 5-10.  Cordova argued that the Court should deny the Motion for Summary Judgment

in light of the disputed issues of material fact and that only a jury could resolve those facts.

See Response at 10-11.

The Defendants then submitted their Reply in Support of Defendants' Motion for Summary

Judgment, filed September 19, 2011 (Doc. 48)("Reply").  The Defendants assert that Cordova

"utterly fails to address the controlling legal issue discussed in the Memorandum of Law."  Reply

at 1.  Furthermore, the Defendants argue that the Response "does not substantiate the existence of

any genuine and material issue of fact through more than bare allegations."  Reply at 1.  Reiterating

arguments from the Motion for Summary Judgment, the Defendants argue that Cordova cannot

prove essential elements of her claims.  See Reply at 3.  The Defendants further emphasize that

Cordova made no argument regarding sovereign immunity, qualified immunity, or punitive

damages.  See Reply at 9-10.

On October 26, 2011, the Court held a hearing.  The Defendants asserted that, while the federal case was stayed, the NMSPB decision was on appeal.  See Transcript of Hearing at 4:11-14 (October 26, 2011)(Kilgore)("Tr.").[17]  The Defendants explained that, in January 2011, the state court reversed the amendments the NMSPB made to Judge Summerfield's opinion and that the Court of Appeals of New Mexico and Supreme Court of New Mexico denied Cordova's petitions for writs of certiorari.  See Tr. at 4:15-5:10 (Kilgore).  The Defendants also explained that, after the Supreme Court of New Mexico denied certiorari, the New Mexico district court entered its Final Mandate on August 2, 2011.  See Tr. at 5:5-10 (Kilgore).

The Defendants asserted that, in the administrative proceeding, Judge Summerfield found that the NMTRD acted appropriately, pursuant to NMTRD polices, and that Cordova had been dismissed with just cause.  See Tr. at 6:3-11 (Kilgore).  They argued that those findings and conclusions should be given preclusive effect, and that Cordova is collaterally estopped from arguing that the NMTRD dismissed her in violation of federal and state discrimination laws.  See Tr. at 6:12-19 (Kilgore).  Under the burden-shifting analysis of federal and state discrimination laws, the Defendants argued that Cordova cannot establish her prima-facie case or that the NMTRD's legitimate, non-discriminatory reason was pretextual, because the Second Amended Recommended Decision determined that Cordova committed misconduct.  See Tr. at 6:20-7:5 (Kilgore).  The Defendants contended that, because Cordova was the petitioner in the NMSPB proceeding, the first requirement of collateral estoppel is satisfied.  See Tr. at 7:10-15 (Kilgore).  The Defendants further asserted that the second requirement of collateral estoppel is met, because both actions contain the

---

[17]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

same issues of fact, whether the NMTRD acted appropriately and whether it had a legitimate nondiscriminatory reason for her dismissal.  See Tr. at 7:16-8:4 (Kilgore).  Finally, the Defendants argued that those issues were actually litigated during the hearing held before Judge Summerfield. See Tr. at 8:5-12 (Kilgore).  Additionally, the Defendants maintained that Judge Summerfield acted in a quasi-judicial capacity, that evidence was given under oath and on the record, and that there was cross-examination with exhibits.  See Tr. at 9:1-3 (Kilgore).  Referencing the Response, the Defendants asserted that Cordova did not address the arguments that the Motion for Summary Judgment raised and argued only that some of Judge Summerfield's findings were incorrect.  See Tr. at 9:19-25 (Kilgore).  Addressing Cordova's contention that she was treated differently than similarly situated persons, the Defendants maintained that this issue was before the state proceeding and that Cordova presented witnesses who testified about how they were treated.  See Tr. at 10:1-11 (Kilgore).

Cordova conceded that there is no dispute about what Judge Summerfield did at the hearing, and that collateral estoppel or res judicata would preclude the issues determined at the state administrative hearing from being relitigated.  See Tr. at 11:6-20 (Court, Juarez).  Cordova stated:

> [W]hat is in dispute, in terms of whether this can go forward or not, is whether, in fact, all the issues or claims that Ms. Cordova is entitled to bring in this Court were, in fact, foreclosed by any of the decisions in the state administrative hearing or by the district court, and they were not."

Tr. at 11:6-12 (Juarez).  Furthermore, Cordova asserted that she did not dispute that Judge Summerfield found that she acted wrongly.  See Tr. at 12:18-21 (Juarez).  Cordova contends, however, that whether she was treated differently was never within the purview of the NMSPB.  See Tr. at 12:21-23 (Juarez).  Cordova suggested that the reason the NMSPB amended Judge Summerfield's findings was that the NMSPB felt that Cordova had been treated in an unfair manner.

-17-

See Tr. at 12:5-13 (Juarez).

The Defendants responded that Judge Summerfield's finding that Cordova was dismissed for just cause precludes any kind of finding that she was treated wrongly.  See Tr. at 14:22-24 (Kilgore).  They asserted that the finding of "just cause" goes to whether there was a legitimate non-discriminatory reason for the adverse employment action.  Tr. at 15:1-4 (Kilgore).  Using the Second Amended Recommended Decision's findings that Cordova falsified documents and that the NMTRD proceeded according to policy, the Defendants argued that Cordova would not be able to show that their proffered reason is pretextual.  See Tr. at 15:16-25 (Kilgore).  Further explaining their position, the Defendants asserted that a finding of just cause is equal to a legitimate nondiscriminatory reason.  See Tr. at 16:5-9 (Court, Kilgore).  The Defendants also contended that the "just cause" finding would bar all of Cordova's causes of action.  Tr. at 16:14-17 (Court, Kilgore).  Explaining the NMSPB's decision to amend the Second Amended Recommended Decision, the Defendants stated that the NMSPB accepted Judge Summerfield's findings in their entirety and only added that he should have considered mitigating circumstances, such as performance and length of time.  See Tr. at 16:25-17:1 (Kilgore).  The Defendants also stated that the Honorable Raymond Z. Ortiz, District Court Judge for the First Judicial District, Santa Fe County, State of New Mexico found those alterations to be arbitrary, capricious, and not supported by substantial evidence.  See Tr. at 17:3-5 (Kilgore).

Moving on from their collateral estoppel argument, the Defendants asserted that sovereign immunity bars the ADEA claim, pursuant to Kimel v. Fla. Bd. of Regents, 528 U.S. 62 (2000).  See Tr. at 17:16-22 (Kilgore).  They conceded that the Court should address the ADEA claim first, because it presents an issue of subject-matter jurisdiction.  See Tr. at 17:24-18:13 (Court, Kilgore).

-18-

The Defendants also asserted that the Individual Defendants are entitled to qualified immunity, because if Judge Summerfield found that there was just cause for dismissal, then Cordova cannot establish that the Individual Defendants violated clearly established law.  See Tr. at 18:20-19:3 (Kilgore).  Finally, the Defendants argued that a claim for punitive damages as a separate cause of action does not exist.  See Tr. at 19:13-15 (Kilgore).

> Cordova argued that this case involves
>
> two different entities that have exclusive control over two different ideas, and on the one hand this entity says, yeah, I can find that the employer acted justly in firing you . . . but whether he fired a male in a similar situation as you, I have no jurisdiction over that so I'm not answering that question.

Tr. at 20:15-21 (Juarez).  Cordova disputed that, when the NMSPB finds that there is a legitimate basis for the firing, a plaintiff can never sue for disparate treatment or discrimination.  See Tr. at 21:1-3 (Juarez).  Were that the case, Cordova asserted, parties would be litigating discrimination cases in areas where the agency has no jurisdiction to find discrimination and state agency proceedings would bar plaintiffs from bringing a claim under Title VII or the NMHRA.  See Tr. at 21:5-11 (Juarez).  Cordova further asserted that her discrimination claims are not claims that have been argued.  See Tr. at 22:1-3 (Juarez).  Cordova argues that the state proceedings addressed only one question: Did the agency release Cordova pursuant to rules and regulations established by them? Tr. at 22:25-23:2 (Juarez).  She maintains that no state adjudicatory body addressed whether the NMTRD acted pretextually or in a discriminatory fashion, because that was not the question before them.  See Tr. at 23:2-8 (Juarez).

Responding to the Court's questions, Cordova conceded that all of the Defendants could take advantage of the preclusive effect of the Second Amended Recommended Decision's findings.  See Tr. at 23:15-24:1 (Juarez).  Cordova also admitted that the Individual Defendants are entitled to

qualified immunity to the extent that it may be applicable and that the Court should dismiss the 42 U.S.C. § 1983 claims.  See Tr. at 23:22-24:5 (Juarez).  As to the sovereign immunity issue, Cordova did not dispute that it is well-established that the Eleventh Amendment bars her claim or that the Court should dismiss the ADEA claim.  See Tr. at 24:6-15, 25:4-18 (Court, Juarez, Kilgore). Finally, Cordova agreed that the Court should dismiss the punitive damages count against the NMTRD.  See Tr. at 24:16-25:1 (Court, Juarez).

Although Cordova agreed that the Court should dismiss the federal claims against the Individual Defendants, she disputed that the Court should dismiss the state claims against the Individual Defendants, because of a failure to exhaust administrative remedies.  See Tr. at 26:4-19 (Court, Juarez, Kilgore).  Cordova argued that the issue, whether filing a claim with the EEOC exhausts administrative remedies as to individuals because the EEOC form has no place to name individuals, had recently been certified to the Supreme Court of New Mexico.  See Tr. at 26:19-27:19 (Juarez).  Cordova suggested that the Court should await the Supreme Court of New Mexico's determination in that case before deciding the issue here.  See Tr. at 28:9-12 (Juarez).

## LAW REGARDING MOTIONS FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is

a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation marks omitted).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'").  Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d

1193, 1199 (10th Cir. 2006)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). Rather, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted). Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving

-22-

party.  See Hunt v. Cromartie, 526 U.S. at 550-55; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255

("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn

in his favor.").  Third, the court cannot decide any issues of credibility.  See Anderson v. Liberty

Lobby, Inc., 477 U.S. at 255.

## LAW REGARDING THE PRECLUSIVE EFFECT OF STATE ADMINISTRATIVE PROCEEDINGS

"Applying the principles of collateral estoppel, or issue preclusion, to decisions of state

administrative bodies serves to promote federalism, conserve judicial resources, and encourage

parties to minimize the expense and burden of repetitive litigation." Salguero v. City of Clovis, 366

F.3d at 1173 (citing Univ. of Tenn. v. Elliott, 478 U.S. 788, 798 (1986)).  The Supreme Court

established that a state agency's decision will have the same preclusive effect that it would receive

from the state court if the state agency: (i) acts in a "judicial capacity"; (ii) resolves "disputed issues

of fact properly before it"; and (iii) the parties have had "an adequate opportunity to litigate" the

issue.  Univ. of Tenn. v. Elliott, 478 U.S. at 799.  Accord Salguero v. City of Clovis, 366 F.3d at

1173.  If the Univ. of Tenn. v. Elliot factors are met, then the court looks to New Mexico law to

determine whether preclusion is proper.  See Salguero v. City of Clovis, 366 F.3d at 1173.

New Mexico law provides that, "[a]dministrative adjudicative determinations may be given

preclusive effect if rendered under conditions in which the parties have the opportunity to fully and

fairly litigate the issue at the administrative hearing." Shovelin v. Cent. N.M. Elec. Coop., Inc., 115

N.M. 293, 298, 850 P.2d 996, 1001 (1993)(citing United States v. Utah Constr. & Mining Co., 384

U.S. 394, 422 (1966)).  For preclusion to apply to an administrative decision, the administrative

body must be acting in a judicial capacity and resolve disputed questions of fact properly before it.

See Guzman v. Laguna Dev. Corp, 147 N.M. 244, 248, 219 P.3d 12, 16 (Ct. App. 2009).

-23-

Under New Mexico law, "collateral estoppel, also called issue preclusion, prevents a party from re-litigating 'ultimate facts or issues actually and necessarily decided in a prior suit.'" Ullrich v. Blanchard, 142 N.M. 835, 839, 171 P.3d 774, 778 (Ct. App. 2007)(quoting Deflon v. Sawyers, 139 N.M. 637, 137 P.3d 577 (2006); Adams v. United Steelworkers of Am., 97 N.M. 369, 373, 640 P.2d 475, 479 (1982)). For collateral estoppel to apply, four elements must be met: "(1) the parties in the current action were the same or in privity with the parties in the prior action, (2) the subject matter of the two actions is different, (3) the ultimate fact or issue was actually litigated, and (4) the issue was necessarily determined." Ullrich v. Blanchard, 142 N.M. at 839, 171 P.3d at 778 (quoting City of Sunland Park v. Macias, 134 N.M. 216, 220, 75 P.3d 816, 820 (Ct. App. 2003)).  If the party invoking the doctrine establishes a prima-facie case, then the burden shifts to the party opposing collateral estoppel to show that he or she was not afforded a fair opportunity to litigate the issue in the prior proceeding.  See Padilla v. Intel Corp., 125 N.M. 698, 701, 964 P.2d 862, 865 (Ct. App. 1998); State v. Bishop, 113 N.M. 732, 734, 832 P.2d 793, 795 (Ct. App. 1992).

Whether the doctrine of collateral estoppel should be applied is within the trial court's discretion, and the exercise of discretion is reviewed for an abuse of discretion on appeal.  See Shovelin v. Cent. N.M. Elec. Coop., 115 N.M. at 299, 850 P.2d at 1002.  Even when all the elements of collateral estoppel are present, the trial court must consider whether countervailing equities militate against application of the doctrine.  See Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor, 115 N.M. 159, 164, 848 P.2d 1086, 1091 (Ct. App. 1993). Collateral estoppel should be applied only where the judge determines that its application would not be fundamentally unfair.  See Reeves v. Wimberly, 107 N.M. 231, 234, 755 P.2d 75, 78 (Ct. App. 1988).

### LAW REGARDING TITLE VII EMPLOYMENT DISCRIMINATION CASES

-24-

"Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin."  Brown v. Gen. Servs. Admin., 425 U.S. 820, 825 (1976)(citing 42 U.S.C. §§ 2000e-2 to 2000e-3).  "Title VII of the Civil Rights Act of 1964 prohibits an employer from failing or refusing to hire or discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Farley v. Leavitt, No. 05-1219, 2007 WL 6364329, at *6 (D.N.M. Dec. 31, 2007)(Browning, J.)(alterations omitted)(quotation marks )(quoting 42 U.S.C. § 2000e-2(a)(1)).  With the 1972 amendments to the statute, Title VII's protections apply to federal employees as well as to employees of private companies.  See Brown v. Gen. Servs. Admin., 425 U.S. at 825-26 (citing 42 U.S.C. § 2000e(b)).

1.      **Prima-Facie Case of Discrimination.**

To set forth a prima-facie case of discrimination, a plaintiff must show: (i) he or she is a member of the class protected by the statute; (ii) he or she suffered an adverse employment action; (iii) he or she was qualified for the position at issue; and (iv) he or she was treated less favorably than others not in the protected class.  See Sanchez v. Denver Pub. Schs., 164 F.3d 527, 531 (10th Cir. 1998).  "Although the four McDonnell Douglas [Corp. v. Green, 411 U.S. 792 (1973)] factors were not cast as a rigid rule to apply to all factual situations, courts have adapted the formulation to fit cases involving claims of discriminatory discharge."  Brown v. Parker-Hannifin Corp., 746 F.2d 1407, 1409 (10th Cir. 1984).  The Tenth Circuit "has stated that a plaintiff may establish a prima facie case of wrongful termination by showing that:" (i) "she belongs to a protected class;" (ii) "she was qualified for her job;" (iii) "despite her qualifications, she was discharged;" and (iv)

"the job was not eliminated after her discharge." Perry v. Woodward, 199 F.3d 1126, 1138 (10th Cir. 1999).

> The Tenth Circuit liberally
>
> defines the phrase adverse employment action. Such actions are not simply limited to monetary losses in the form of wages or benefits. Instead, we take a case-by-case approach, examining the unique factors relevant to the situation at hand. Although we do not deem a mere inconvenience or an alteration of job responsibilities to be an adverse employment action, the prong is satisfied by a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.

Jones v. Okla. City Pub. Schs., 617 F.3d at 1279 (internal quotation marks and citations omitted).

> The relevant inquiry at the prima facie stage [regarding whether the employee was qualified for the position] is not whether an employee or potential employee is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that she possesses the objective qualifications necessary to perform the job sought.

EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1193 (10th Cir. 2000). "If an employee is able to introduce such evidence, she has satisfied [the] prima facie burden of demonstrating that she does not suffer from an 'absolute or relative lack of qualifications.'" EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d at 1193-94 (citation omitted). "Thus, a plaintiff has satisfied her prima facie burden of showing she is qualified by presenting some credible evidence that she possesses the objective qualifications necessary to perform the job at issue." EEOC v. Horizon/CMS Healthcare Corp., 220 F.2d at 1194 (citation omitted). In EEOC v. Horizon/CMS Healthcare Corp., the Tenth Circuit found that the EEOC "need only present some credible evidence that the Charging Parties possessed the basic skills necessary to perform the [position at issue]." 220 F.2d at 1194.

The Tenth Circuit has noted that "[a] plaintiff alleging discrimination in violation of Title VII can satisfy the fourth element of her prima facie case in a number of ways." Ortiz v. Norton,

254 F.3d 889, 897 (10th Cir. 2001).  One of those ways in a discriminatory discharge case is by showing that the job was not eliminated.  See  Ortiz v. Norton, 254 F.3d at 897 (citations omitted). The Tenth Circuit has also "stated that the fourth element of the prima facie test is met if the discharged plaintiff can show that someone was hired to replace her." Perry v. Woodward, 199 F.3d at 1138 (citation omitted).

      **2.**      **Legitimate Nondiscriminatory Reason for Employment Decision.**

After the plaintiff establishes a prima-facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action.  See McDonnell Douglas Corp v. Green, 411 U.S. at 802.  "[T]he defendant's burden at this stage is one of production, not one of persuasion."  Mirzai v. State of N.M. Gen. Servs. Dep't, 506 F. Supp. 2d 767, 775 (D.N.M. 2007)(Browning, J.).  "If the defendant is successful in articulating some legitimate, nondiscriminatory reason, the presumption of discrimination established by the prima facie showing simply drops out of the picture."  Mirzai v. State of N.M. Gen. Servs. Dep't, 506 F. Supp. 2d at 775 (internal quotation marks omitted)(citations omitted).  The employer's burden is one of production and it need not "persuade the court that it was actually motivated by the proffered reasons." Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1425 (10th Cir.1993)(internal quotation marks omitted).

      **3.**      **Pretext as to the Proffered Legitimate Nondiscriminatory Reason.**

"Once the defendant meets its burden of production by offering a legitimate rationale in support of its employment decision, the burden shifts back again to the plaintiff to show that the defendant's proffered reasons were a pretext for discrimination."  McDonnell Douglas Corp. v. Green, 411 U.S. at 804-05.  "[M]ere conjecture that [the] employer's explanation is a pretext for

intentional discrimination is an insufficient basis for denial of summary judgment." Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988).

The Tenth Circuit has stated a plaintiff can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)(internal quotation marks omitted)(citations omitted). See Hare v. Denver Merch. Mart, Inc., 255 F.App'x 298, 304 (10th Cir. 2007)(unpublished). Although "a plaintiff may not be forced to pursue any particular means of demonstrating that a defendant's stated reasons are pretextual," Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000)(alterations omitted), pretext is typically shown in one of three ways:

> (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

Green v. New Mexico, 420 F.2d 1189, 1193 (10th Cir. 2005). See Wagoner v. Pfizer, Inc., 391 F.App'x 701, 707 (10th Cir. 2010)(unpublished)("A plaintiff typically makes a showing of pretext with evidence that: (1) defendant's stated reason for the adverse employment action is false, (2) defendant acted contrary to a written policy, or (3) defendant acted contrary to an unwritten policy or practice."). "The inquiry goes to the subjective belief of those making the termination decision; '[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs.'" Hare

v. Denver Merch. Mart, Inc., 255 F.App'x. at 304 (quoting Rivera v. City and Cnty. of Denver, 365 F.3d 912, 924-25 (10th Cir. 2004)).

"Evidence tending to show pretext permits an inference that the employer acted for discriminatory reasons." Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1125 (10th Cir. 2005)(citation omitted). At the summary judgment stage, "the inference of discrimination permitted by evidence of pretext must be resolved in favor of the plaintiff." Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1125 (10th Cir. 2005)(citation omitted). "Thus, once a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment." Bryant v. Farmers Ins. Exch., 432 F.3d at 1125 (citation omitted).

The Tenth Circuit has stated that the "mere variety in reasons [for an employee's termination will] not alone undermine their credibility[;] [e]ach individual may consider a different reason to be the essential factor in a decision to terminate." Hare v. Denver Merch. Mart, Inc., 255 F.App'x at 305 (citation omitted). When, however, the various reasons are not only different but mutually inconsistent, the contradictions are sufficient to establish pretext for the purpose of summary judgment. See Hare v. Denver Merch. Mart, Inc., 255 F.App'x at 305 (citation omitted); Ruleford v. Tulsa World Pub. Co., 266 F.App'x 778, 782 (10th Cir. 2008)("Although inconsistent rationales may constitute pretext, the mere variety of reasons for a termination decision do not alone create pretext.")(citations omitted).

### LAW REGARDING ADEA CLAIMS

The ADEA prohibits employers from "discharg[ing] any individual . . . because of such

individual's age." 29 U.S.C. § 623(a)(1).  A plaintiff in an age discrimination case must prove that age motivated the employer's actions.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000)("[T]he plaintiff's age must have actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.")(alteration in original)(internal quotation marks omitted).

At the summary judgment stage,  the nonmoving party must come forth with proof that can be met either by demonstrating direct evidence of the employer's discriminatory intent or by using circumstantial evidence that creates an inference of age bias under the McDonnell Douglas framework.  And the plaintiff need only show that one or more contradicted factual issues about the elements of the prima-facie case or pretext appear from the materials submitted to the court in connection with the motion under the McDonnell Douglas framework.  In a termination case, a plaintiff can establish a prima-facie case of age discrimination by showing that he or she was: (i) "within the protected class of individuals 40 or older;" (ii) "performing satisfactory work;" (iii) "terminated from employment;" and (iv) "replaced by a younger person, although not necessarily one less than 40 years of age."  Adamson v. Multi Community Diversified Services, Inc., 514 F.3d 1136, 1146 (10th Cir. 2008).

## LAW REGARDING THE ADA

To establish a prima-facie case of discrimination under the ADA, a plaintiff must show that: "(1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) her employer discriminated against her because of her disability."  MacKenzie v. City and Cnty. of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005).  42 U.S.C. § 12102 provides:

The term "disability" means, with respect to an individual –

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).  Merely having a medical condition does not make one disabled for purposes of the ADA.  See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002).

> It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment.  Instead, the ADA requires [those claiming the ADA's protection] . . . to offer evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial.

Toyota Motor Mfg. Ky., Inc. v. Williams, 534 U.S. at 198.  In Vigil v. City of Espanola, No. 07-1159, 2008 WL 6045546 (D.N.M. Oct. 31, 2008)(Browning, J.), the Court found that the plaintiff's heart condition was not a disability as the ADA defined the term.  See 2008 WL 6045546, at *1. The Court noted that the plaintiff primarily relied on his doctors' determinations that he was incapacitated, but failed to introduce evidence that his condition was long-term, such that it could be considered substantial as the ADA requires.  See Vigil v. City of Espanola, 2008 WL 6045546, at *10-11.

Determining whether someone is disabled within the meaning of the ADA requires a three-step process: (i) determining whether the plaintiff's "condition is a physical impairment"; (ii) determining whether any of the life activities the plaintiff identifies "constitutes a major life activity under the ADA"; and (iii) determining "whether the impairment substantially limited the major life activity."  MacKenzie v. City and Cnty. of Denver, 414 F.3d at 1275.  The first two issues are questions of law.  See MacKenzie v. City and Cnty. of Denver, 414 F.3d at 1275.

Major-life activities include such functions as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, sleeping, sitting, standing, lifting, reaching, and working.  See Poindexter v. Atchison, Topeka and Santa Fe Ry. Co., 168 F.3d 1228, 1231 (10th Cir. 1999).  Physical exertion is not a major-life activity, but "working" has been recognized as a major-life activity.  MacKenzie v. City and County of Denver, 414 F.3d at 1275.  If the plaintiff's disability relates to the major-life activity of work, the plaintiff must demonstrate that he or she is

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

The appropriate inquiry is whether the plaintiff could not perform tasks central to most people's daily lives, and not whether he or she could perform the tasks associated with a specific job. See Fryer v. Coil Tubing Servs., LLC, 415 F.App'x 37, 44 n.14 (10th Cir. 2011)(unpublished).  "If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs.  Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs."  Corley v. Dep't of Veterans Affairs ex rel. Principi, 218 F.App'x 727, 738 (10th Cir. 2007)(unpublished).   A claimant is not required to

> present evidence of a precise number of jobs from which he was disqualified because of his impairment.  But in his circumstances he did need to present evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g., few, many, most) from which [he] would be excluded.

Corley v. Dep't of Veterans Affairs ex rel. Principi, 218 F.App'x at 739 (internal quotation marks omitted)(citations omitted).

For an impairment to qualify for purposes of the ADA, "[t]he impairment's impact must . . .

be permanent or long term." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. at 198. See Velarde v. Associated Reg'l and Univ. Pathologists, 61 F.App'x 627, 631 & n.3 (10th Cir. 2003)(unpublished)(holding that impairments lasting less than two months did not substantially limit the claimant's overall functioning); McKenzie v. Dovala, 242 F.3d 967, 973 (10th Cir. 2001)(stating that approximately four months of missed work would not "tend to support a finding of disability, inasmuch as [the plaintiff] has been released to return to work, [but] the evidence as a whole could lead a reasonable jury to conclude that she had a record of a disability for purposes of the ADA").

The Tenth Circuit noted in Aldrich v. Boeing Co., 146 F.3d 1265 (10th Cir. 1998):

> Although temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities . . . . an impairment does not necessarily have to be permanent to rise to the level of a disability. Some conditions may be long-term, or potentially long-term, in that their duration is indefinite and unknowable or is expected to be at least several months. Such conditions, if severe, may constitute disabilities.

146 F.3d at 1270 (internal quotation marks omitted)(citations omitted).

## LAW REGARDING RETALIATION CLAIMS

"A claim of retaliation is a distinct allegation of an unlawful employment practice." Duncan v. Mgr., Dep't of Safety, City & Co. of Denver, 397 F.3d 1300, 1314 (10th Cir. 2005). A Title VII plaintiff must "exhaust administrative remedies for each individual discriminatory or retaliatory act." Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003). To succeed on a claim of retaliation, a plaintiff must show: (i) she engaged in protected activity; (ii) she suffered an adverse employment action; and (iii) there was a causal connection between the protected activity and the adverse action. See O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001). An adverse employment action "must be materially adverse to the employee's job status. . . .  The adverse action must amount to a significant change in employment status, such as firing, failing to promote, reassignment

with significantly different responsibilities, or a decision causing a significant change in benefits."
Meiners v. Univ. of Kan., 359 F.3d 1222, 1230 (10th Cir. 2004)(internal quotation marks
omitted)(citations omitted).

In Duncan v. Mgr., Dep't of Safety, City & Co. of Denver, 397 F.3d 1300 (10th Cir. 2005),
the plaintiff alleged a series of acts that she stated were in retaliation for her use of the internal-
affairs complaint process. See 397 F.3d at 1314. These acts included the failure to receive backup,
an angry outburst by a lieutenant during an internal affairs investigation, and her general
ostracization by other officers. See Duncan v. Mgr., Dep't of Safety, City & Co. of Denver, 397
F.3d at 1314. The Tenth Circuit found: "None of the actions alleged by Ms. Duncan before April
14, 1998 materially affected her employment status. These acts may have made her work
environment unpleasant, but they are insufficient to support a retaliation claim." Duncan v. Mgr.,
Dep't of Safety, City & Co. of Denver, 397 F.3d at 1314. The Tenth Circuit noted that the plaintiff
had identified one act severe enough to be an adverse employment action to satisfy the second prong
for retaliation -- she was transferred to the police academy in retaliation for filing her original EEOC
charge; however, the Tenth Circuit found that she failed to file a separate EEOC charge detailing
the plausibly adverse action, and thus the district court properly dismissed her retaliation claim. See
Duncan v. Mgr., Dep't of Safety, City & Co. of Denver, 397 F.3d at 1314.

"[T]he absence of a reference to unlawful discrimination . . . can preclude a retaliation claim
because an employer cannot engage in unlawful retaliation if it does not know that the employee has
opposed or is opposing a violation of Title VII." Petersen v. Utah Dep't of Corr., 301 F.3d 1182,
1188 (10th Cir. 2002). See Pope v. ESA Servs., Inc., 406 F.3d 1001, 1010 (8th Cir. 2005)(holding,
in Title VII retaliation case, that an employee's comments about the absence of black managers did

not constitute protected activity, because employee failed to attribute the absence of managers to

racial discrimination); Trammel v. Simmons First Bank of Searcy, 345 F.3d 611, 615 (8th Cir. 2003)

(holding that ADEA plaintiff's letter-writing campaign accusing employer of improper loan

procedures was not protected activity, because the letters were not written to oppose age

discrimination); Barber v. CSX Distrib. Serv's., 68 F.3d 694, 701 (3d Cir. 1995)(holding that

employee's ADEA retaliation claim failed, because employee's criticism of employer's selection

of a less qualified, younger applicant for a job, without specifically complaining about age

discrimination, did not constitute protected conduct).

## LAW REGARDING THE NMHRA

The NMHRA makes it an unlawful discriminatory practice for

> an employer, unless based on a bona fide occupational qualification or other
> statutory prohibition, to refuse to hire, to discharge, to promote or demote or to
> discriminate in matters of compensation, terms, conditions or privileges of
> employment against any person otherwise qualified because of race, age, religion,
> color, national origin, ancestry, sex, physical or mental handicap or serious medical
> condition, or, if the employer has fifty or more employees, spousal affiliation;
> provided, however, that 29 U.S.C. Section 631(c)(1) and (2) shall apply to
> discrimination based on age; or, if the employer has fifteen or more employees, to
> discriminate against an employee based upon the employee's sexual orientation or
> gender identity[.]

N.M.S.A. 1978, § 28-1-7A.  The NMHRA allows individuals to bring a lawsuit in the appropriate

district court after exhausting their administrative remedies.  See Luboyeski v. Hill, 117 N.M. 380,

382, 872 P.2d 353, 355 (1994).  The NMHRA provides:

> A person aggrieved by an order of the commission may obtain a trial de novo in the
> district court of the county where the discriminatory practice occurred or where the
> respondent does business by filing a notice of appeal within ninety days from the
> date of service of the [New Mexico Human Rights] commission's order.

N.M.S.A. 1978, § 28-1-13A.  Cf. Bates v. New Mexico Corrections Dept., No. 08-1013, 2010 WL

4339367, at *7 (D.N.M. Sept. 30, 2010)(Browning, J.)("NMHRA claims must be administratively exhausted before being brought in federal court.").

The Supreme Court of New Mexico applies the framework that the Supreme Court of the United States established in McDonnell Douglas Corp. v. Green "[w]hen considering a violation of the NMHRA." Juneau v. Intel Corp., 139 N.M. 12, 15, 127 P.3d 548, 551 (2005). The Supreme Court of New Mexico has stated that, "when considering claims under the NMHRA, we may look at federal civil rights adjudication for guidance in interpreting the NMHRA. Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own." Ocana v. Am. Furniture Co., 135 N.M. 539, 549, 91 P.3d 58, 68 (2004) (internal quotation marks omitted)(citations omitted).

While New Mexico uses federal law to interpret the NMHRA, there may be two ways in which the NMHRA is broader than federal law. First, as this Court has previously acknowledged, the Supreme Court of New Mexico allows for personal liability under the NMHRA. See Duprey v. Twelfth Judicial Dist. Court, No. 08-0756, 2009 WL 2482170, at *7 (D.N.M. July 28, 2009)(Browning, J.). The NMHRA defines "employer" as "any person employing four or more persons and any person acting for an employer." N.M.S.A. 1978, § 28-1-2B. While acknowledging that there is generally no personal liability under Title VII, the Supreme Court of New Mexico has "reject[ed] the proposition that there can exist no individual liability under the NMHRA." Sonntag v. Shaw, 130 N.M. 238, 243, 22 P.3d 1188, 1193 (2001). In Sonntag v. Shaw, a defendant relied on Title VII case law to argue that the owner of a corporation could not be sued as an individual under the NMHRA. See Sonntag v. Shaw, 130 N.M. at 243, 22 P.3d at 1193. Although it held that the defendant could not be held personally liable, given that the plaintiff had failed to exhaust

administrative remedies, the Supreme Court of New Mexico declined to close the door on individual

liability under the NMHRA.  See Sonntag v. Shaw, 130 N.M. at 243, 22 P.3d at 1193.  The Supreme

Court of New Mexico noted:

> [T]his Court has acknowledged the possibility of individual liability for
> discrimination claims.  Cf. Luboyeski v. Hill, 117 N.M. 380, 382, 872 P.2d 353, 355
> (1994)(affirming the dismissal of individual defendants because the plaintiff failed
> to exhaust administrative remedies against them); Mitchell-Carr v. McLendon,
> 1999-NMSC-025, ¶ 10, 127 N.M. 282, 980 P.2d 65 (citing Luboyeski).  As Plaintiff
> suggests, the potential for individual liability for discrimination claims is rooted in
> the language of the NMHRA itself, which forbids "any person" from supporting a
> discriminatory practice.  Section 28-1-7(i); see N.M.S.A. 1978, § 28-1-2(A) (1993)
> (including within its definition of "person" for purposes of the NMHRA, "one or
> more individuals").

Sonntag v. Shaw, 130 N.M. at 243, 22 P.3d at 1193.  Second, the language of "serious medical

condition" in the NMHRA, N.M.S.A. 1978, § 28-1-7, may be broader in scope than the term

disability in the Americans with Disabilities Act, 42 U.S.C. §§ 12201 to 12213.  See Clayton v.

Pioneer Bank, No. 07-0680, 2008 WL 5787472, at *17-18 (D.N.M. Dec. 31, 2008)(Browning,

J.)(recognizing that, although "the terms 'medical condition' under the NMHRA, and 'disability,'

under the ADA, may be interchangeable in some cases[,]" they may not in others).

## LAW REGARDING ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment provides: "The Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the United

States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const.

amend. XI.  The immunity articulated in the Eleventh Amendment has also been construed to

prohibit federal courts from entertaining suits against states brought by their own citizens or citizens

of another state without their consent.  See Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299,

304 (1990).  State agencies and state officials are likewise provided immunity as "an arm of the

state." Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 280-81 (1977).

Exceptions to a state's Eleventh Amendment immunity are few.  A state may, however, voluntarily waive its immunity.  See Edelman v. Jordan, 415 U.S. 651, 673 (1974).  Congress may also abrogate Eleventh Amendment immunity pursuant to section 5 of the Fourteenth Amendment to the Constitution of the United States, where the statute explicitly manifests Congress' intent to do so.  See Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976).  Congress did not, however, abrogate Eleventh Amendment immunity when enacting 42 U.S.C. § 1983.  See Quern v. Jordan, 440 U.S. 332, 340 (1979).  Consequently, Eleventh Amendment immunity extends to defendants under that statute, and claims pursuant thereto in the federal courts are barred as a matter of law.

Although not properly characterized as an exception to a state's Eleventh Amendment immunity, the doctrine announced in Ex parte Young, 209 U.S. 123 (1908),  allows for suits against state officials under certain circumstances.  See Elephant Butte Irrigation Dist. of N.M. v. Dep't of the Interior, 160 F.3d 602, 607-08 (10th Cir. 1998)("The Ex parte Young doctrine is not actually an exception to Eleventh Amendment state immunity because it applies only when the lawsuit involves an action against state officials, not against the state.").  In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court of the United States held that the Eleventh Amendment bar generally does not apply to state officials defending suit in federal court which seeks only prospective relief from violations of federal law.  The Ex parte Young doctrine allows suit to proceed against defendant state officials if the following requirements are met: (i) the plaintiffs are suing state officials rather the state itself; (ii) the plaintiffs have alleged a non-frivolous violation of federal law; (iii) the plaintiffs seek prospective equitable relief rather than retroactive monetary relief from the state treasury; and (iv) the suit does not implicate special sovereignty interests.  See Elephant Butte

-38-

Irrigation District of New Mexico v. Department of the Interior, 160 F.3d at 609 (10th Cir. 1998).

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the United States Constitution or from federal statute.  See Spielman v. Hildebrand, 873 F.2d 1377, 1386 (10th Cir. 1989)("Section 1983 does not provide a remedy if federal law does not create enforceable rights.").  Rather, section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.  Thus, to state a claim upon which relief can be granted under section 1983, a plaintiff

must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Martinez v. Martinez, No. 09-0281, 2010 WL 1608884, at *11 (D.N.M. Mar. 30, 2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).  Neither the civil-rights statutes nor the Fourteenth Amendment, however, are a license to the federal judiciary to displace state law through the creation of a body of general federal tort law.  See Paul v. Davis, 424 U.S. 693, 701 (1976)(Fourteenth Amendment); Griffin v. Breckenridge, 403 U.S. 88, 101–02 (1971)(civil-rights statute).

Section 1983 provides a cause of action only for violations of a plaintiff's personal rights and not for the rights of someone else.  <u>See</u> <u>Archuleta v. McShan</u>, 897 F.2d 495, 497 (10th Cir. 1990). Historically, the guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property.  <u>See</u> <u>Archuleta v. McShan</u>, 897 F.2d at 497 (quoting <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986)).  Moreover, the element of deliberateness requires directing of the misconduct toward the plaintiff before the Due Process Clause is implicated.  <u>See</u> <u>Archuleta v. McShan</u>, 897 F.2d at 499.  In <u>Archuleta v. McShan</u>, the Tenth Circuit used the term "bystander" to refer to someone who witnessed a police action, but who is not himself or herself part of the action.  <u>See</u>  897 F.2d at 498.  As such, a bystander is unable to assert the kind of deliberate deprivation of his or her rights necessary to state a due-process claim under section 1983.  <u>See</u> <u>also</u> <u>Grandstaff v. City of Borger</u>, 767 F.2d 161, 172 (5th Cir. 1985)(holding that a rancher's wife and stepsons who witnessed a mistaken shooting of the rancher by police had no constitutional claim for their own emotional injuries under section 1983, because there is no constitutional right to be free from witnessing this police action); <u>Coon v. Ledbetter</u>, 780 F.2d 1158, 1160-61 (5th Cir. 1986)(holding that the wife who witnessed sheriff's deputies shooting into her mobile home had no constitutional claim for emotional injuries, because the deputies' action was not directed towards her).

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 807 (1982).  "Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands

customarily imposed upon those defending a long drawn-out lawsuit.'"  Roybal v. City of Albuquerque, No. 08-0181, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009)(Browning, J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  Issues of qualified immunity are best resolved at the "earliest possible stage in litigation."  Pearson v. Callahan, 555 U.S. 223, 232 (2009)(quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam)).  "If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit."  Lewis v. Tripp, 604 F.3d 1221, 1230 (10th Cir. 2010).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. at 231 (quoting Harlow v. Fitzgerald, 457 U.S. at 818).  Qualified immunity also shields officers who have "reasonable, but mistaken beliefs" and operates to protect officers from the sometimes "hazy border[s]" of the law.  Saucier v. Katz, 533 U.S. 194, 205 (2001).  When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the plaintiff to meet a "heavy two-part burden."  Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  The plaintiff must demonstrate on the facts alleged: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged unlawful activity.  See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009).

### 1.    Procedural Approach to Qualified Immunity.

The Supreme Court recently revisited the proper procedure for lower courts to evaluate a qualified immunity defense.  In Pearson v. Callahan, the Supreme Court held that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances of the particular

case at hand." 555 U.S. at 236. The Supreme Court also noted that, while no longer mandatory, the

protocol outlined in Saucier v. Katz will often be beneficial. See Pearson v. Callahan 555 U.S. at

241. In rejecting a mandatory approach, the Supreme Court recognized that "[t]here are cases in

which it is plain that a constitutional right is not clearly established but far from obvious whether

in fact there is such a right," and that such an approach burdens district court and courts of appeals

with "what may seem to be an essentially academic exercise." Pearson v. Callahan, 555 U.S. at 237.

The Supreme Court also recognized that a mandatory approach "departs from the general rule of

constitutional avoidance and runs counter to the older, wiser judicial counsel not to pass on

questions of constitutionality unless such adjudication is unavoidable." Pearson v. Callahan, 555

U.S. at 241 (alterations omitted)(internal quotation marks omitted). Once the plaintiff has

established the inference that the defendant's conduct violated a clearly established constitutional

right, a qualified immunity defense generally fails. See Cannon v. City & Cnty. of Denver, 998 F.2d

867, 870-71 (10th Cir. 1993).

The Supreme Court recognized seven circumstances where district courts should proceed

directly to and "should address only" the clearly established prong of the qualified immunity

analysis:

> [W]hen (1) the first, constitutional violation question "is so factbound that the
> decision provides little guidance for future cases"; (2) "it appears that the question
> will soon be decided by a higher court"; (3) deciding the constitutional question
> requires "an uncertain interpretation of state law"; (4) "qualified immunity is
> asserted at the pleading stage" and "the precise factual basis for
> the . . . claim . . . may be hard to identify"; (5) tackling the first element "may create
> a risk of bad decisionmaking" due to inadequate briefing; (6) discussing both
> elements risks "bad decisionmaking" because the court is firmly convinced the law
> is not clearly established and is thus inclined to give little thought to the existence
> of the constitutional right; or (7) the doctrine of "constitutional avoidance" suggests

the wisdom of passing on the first constitutional question because "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."

Kerns v. Bader, Nos. 09-2273, 10-2103, 10-2106, 2011 WL 6367728, at *4 (10th Cir. Dec. 20, 2011)(quoting Pearson v. Callahan, 555 U.S. at 236-42).   Regarding the last of these seven circumstances, the Supreme Court has clarified that courts may "avoid avoidance" and address the first prong before the second prong in cases involving a recurring fact pattern where guidance on the constitutionality of the challenged conduct is necessary and the conduct is only likely to face challenges in the qualified immunity context.  Camreta v. Greene, 131 S.Ct. 2020, 2031-32 & n.5 (2011).  See Kerns v. Bader, 2011 WL 6367728, at *5.  "In general, courts should think hard, and then think hard again, before turning small cases into large ones."  Camreta v. Greene, 131 S.Ct. at 2032.  Accord Kerns v. Bader, 2011 WL 6367728, at *5.  The Supreme Court has also recently emphasized in the qualified immunity context: "Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'"  Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2080 (2011).

### 2.    Clearly Established Rights in the Qualified Immunity Analysis.

In evaluating whether the right was clearly established, a district court considers whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he or she did violated that right.  See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007).  A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned."  Zweibon v. Mitchell, 720 F.2d 162, 172-73 (D.C. Cir. 1983).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001). See Medina v. City & Cnty. of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). On the other hand, the Supreme Court has observed that it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001)(quoting Saucier v. Katz, 533 U.S. at 202).

The Supreme Court further clarified what a plaintiff must show to satisfy the clearly established requirement in Ashcroft v. al-Kidd, 131 S.Ct. 2074 (2011). The Supreme Court held that, while a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S.Ct. at 2083. "The operation of this standard, however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Anderson v. Creighton, 483 U.S. at 639. The level of generality at which the legal rule is defined is important because qualified immunity shields officers who have "reasonable, but mistaken beliefs" as to the application of law to facts and operates to protect officers from the sometimes "hazy border[s]" of the law. Saucier v. Katz, 533 U.S. at 205. The Tenth Circuit, in Kerns v. Bader, focused on the Supreme Court's language in Ashcroft v. al-Kidd in its analysis of qualified immunity. In that case, which dealt with a search of a home, the Tenth

-44-

Circuit explained that the relevant question "wasn't whether we all have some general privacy interest in our home," but "whether it was <u>beyond debate</u> in 2005 that the officers' entry and search lacked legal justification." <u>Kerns v. Bader</u>, 2011 WL 6367728, at *7 (emphasis added). The Tenth Circuit reiterated that "a case on point isn't required if the impropriety of the defendant's conduct is clear from existing law," but held that, where distinctions "<u>might</u> make a constitutional difference," the law is not clearly established. <u>Kerns v. Bader</u>, 2011 WL 6367728, at *10 (emphasis original). Earlier Tenth Circuit cases, clarifying the level of generality at which a legal rule must be defined, applied a sliding scale to determine when the law is clearly established. In <u>Casey v. City of Federal Heights</u>, 509 F.3d 1278 (10th Cir. 2007), the Tenth Circuit re-emphasized its sliding scale approach: "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." 509 F.3d at 1284 (citing <u>Pierce v. Gilchrist</u>, 359 F.3d 1279, 1298 (10th Cir. 2004)). Thus, "when an officer's violation . . . is particularly clear . . . , [the Tenth Circuit] does not require a second decision with greater specificity to clearly establish the law." <u>Casey v. City of Fed. Heights</u>, 509 F.3d at 1284.

### 3. <u>Factual Disputes in the Qualified-Immunity Analysis.</u>

In determining whether the plaintiff has met his or her burden of establishing a constitutional violation that was clearly established, a court construes the facts in the light most favorable to the plaintiff as the non-moving party. <u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372, 378-80 (2007); <u>Riggins v. Goodman</u>, 572 F.3d at 1107 (noting that the Tenth Circuit "accept[s] the facts as the plaintiff alleges them"). In <u>Thomson v. Salt Lake County</u>, 584 F.3d 1304 (10th Cir. 2009), the Tenth Circuit explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically,

> "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]" York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott [v. Harris], 550 U.S. at 380); see also Estate of Larsen ex. rel Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cnty., 584 F.3d at 1312. "The Tenth Circuit, in Rhoads v. Miller, explained that the blatant contradictions of the record must be supported by more than other witnesses' testimony[.]"  Lymon v. Aramark Corp., 728 F.Supp.2d 1222, 1249 (D.N.M. 2010)(Browning, J.)(citation omitted).

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury."  Scott v. Harris, 550 U.S. 372, 377 (2007). "[T]his usually means adopting . . . the plaintiff's version of the facts,"  id. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him,"  id. at 380.  In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events.  550 U.S. at 379.  Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony.  There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury.  And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility. . . .  Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistence or provocation.  If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 352 F.App'x 289, 291-92 (10th Cir. 2009)(unpublished)(internal quotation marks omitted).  See Lymon v. Aramark Corp., 728 F.Supp.2d at 1249-50 (quoting Rhoads v. Miller, 352 F.App'x at 291-92).  In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes, United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal question of qualified immunity and "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court"

before inquiring into whether there are genuine issues of material fact for resolution by the jury. 584 F.3d at 1326-27 (Holmes, J. concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th Cir. 1988)(Johnson, J., dissenting)(observing that, even if factual disputes exist, "these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts.")).

## ANALYSIS

The Court finds that sovereign immunity bars Cordova's ADEA claim, because Congress did not validly abrogate the Eleventh Amendment to the United States Constitution in the ADEA. The Court also finds that collateral estoppel does not bar Cordova's litigation of her discrimination and retaliation claims, because the state court judgment does not address pretext or discrimination, and because the Second Amended Recommended Decision does not necessarily decide whether the Defendants' given reason for Cordova's discharge is pretextual. The Court concludes that there is no basis for Cordova's 42 U.S.C. § 1983 claim against Salazar and that Salazar is entitled to qualified immunity. Finally, the Court determines that a claim for punitive damages is not a separate cause of action.

## I.      SOVEREIGN IMMUNITY BARS THE ADEA CLAIM AGAINST THE NMTRD.

The Defendants argue that sovereign immunity bars Cordova's ADEA claim against the NMTRD. See Motion for SJ at 13. At the hearing, Cordova conceded that it is well-established that the ADEA does not abrogate sovereign immunity and that the Court should dismiss the ADEA claim. See Tr. at 24:6-15, 25:4-18 (Court, Juarez, Kilgore).

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United

States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const.

amend. XI.  The NMTRD qualifies for sovereign immunity as "an arm of the state."  Mt. Healthy

City Bd. of Ed. v. Doyle, 429 U.S. 274, 280-81 (1977).  See Hawthorne v. IRS, No. 03-1112, 2003

WL 23200235, at *1 (D.N.M. Oct. 2, 2003)(Johnson, J.)(holding that the Eleventh Amendment bars

the plaintiff's suit against the NMTRD under the arm-of-the-state doctrine).  Although Congress

may abrogate Eleventh Amendment immunity pursuant to section 5 of the Fourteenth Amendment

to the Constitution of the United States, see Fitzpatrick v. Bitzer, 427 U.S. at 456, the Supreme Court

has held that "in the ADEA, Congress did not validly abrogate the States' sovereign immunity to

suits by private individuals," Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91 (2000).

　　　　Accordingly, because sovereign immunity bars a suit against the NMTRD under the ADEA,

and because Cordova concedes that the Court should dismiss her claims under the ADEA, the Court

will grant the Motion for Summary Judgment as it applies to the ADEA claims contained in Counts

IV, VIII, and IX.

## II.   THE SECOND AMENDED RECOMMENDED DECISION'S JUST-CAUSE FINDING DOES NOT BAR CORDOVA'S DISCRIMINATION CLAIMS UNDER THE PRINCIPLES OF COLLATERAL ESTOPPEL.

　　　　In their Motion for Summary Judgment, the Defendants argued that the Second Amended

Recommended Decision is entitled to preclusive effect under the doctrine of collateral estoppel and

that the just-cause finding conclusively establishes that Cordova's misconduct was a legitimate, non-

discriminatory reason to discharge her.  See Motion for SJ at 7-10.  At the hearing, Cordova

conceded that Judge Summerfield's findings and conclusions are entitled to some preclusive effect.

See  Tr. at 11:6-20 (Court, Juarez).  Cordova argued, however, that collateral estoppel does not bar

her claims, because the allegations of discrimination were not before Judge Summerfield, the

-48-

NMSPB, or the New Mexico state district court, and that the administrative bodies did not have authority to decide them.  See 20:15-22:4 (Juarez).

The Supreme Court has established that a state agency's decision will have the same preclusive effect in federal court that it would receive in state court if the state agency: (i) acts in a "judicial capacity"; (ii) resolves "disputed issues of fact properly before it"; and (iii) the parties have had "an adequate opportunity to litigate" the issue.  Univ. of Tenn. v. Elliott, 478 U.S. at 799. Accord Salguero v. City of Clovis, 366 F.3d at 1173.  Under the New Mexico Administrative Code, a hearing officer, such as Judge Summerfield, has the power to: (i) issue pre-hearing orders; (ii) consolidate and join cases; (iii) oversee pre-hearing discovery; (iv) compel the production of evidence; (v) rule on the parties' motions; (vi) subpoena witnesses and documents; (vii) conduct and preside over an evidentiary hearing; and (viii) recommend a decision to the NMSPB. See N.M.A.D.C. §§ 1.7.12.8-1.7.12.20.  Judge Summerfield exercised many of these powers in conducting the hearing on Cordova's termination, see Second Amended Recommended Decision at 1-40, and the New Mexico district court recognized that Judge Summerfield "acted in a quasi-judicial capacity," First Judicial Court Decision ¶ 2, at 2.  In the Second Amended Recommended Decision, Judge Summerfield made factual findings and determined that the NMTRD had just cause and acted appropriately when it dismissed Cordova, thus satisfying the second University of Tennessee v. Elliott requirement.  See Second Amended Recommended Decision ¶¶ 1-28, at 1-10, 12-16.  Finally, the third University of Tennessee v. Elliott requirement, that the parties had an adequate opportunity to litigate the issue, is satisfied, because a two-day hearing took place during which both parties presented witnesses, exhibits, and argue before Judge Summerfield.  See Second Amended Recommended Decision at 21-37.

Ordinarily, if the University of Tennessee. v. Elliot factors are met, then the court looks to New Mexico law to determine whether preclusion on the basis of the administrative agency is proper. See Salguero v. City of Clovis, 366 F.3d at 1173. Discrimination claims under Title VII, the ADA, and the ADEA, however, are the "exceptions to the application of the collateral estoppel doctrine to administrative findings later raised in federal court." Boroff v. Mail-Well Envelope Co., 931 F.2d 62, 1991 WL 65189, at *4 n.1 (10th Cir. Apr. 23, 1991)(unpublished table decision). Interpreting Title VII, the Supreme Court has held that decisions of state or local administrative bodies, acting in a judicial capacity, are not, by themselves, entitled to preclusive effect. See Univ. of Tenn. v. Elliott, 478 U.S. at 795-96 (reasoning that Congress intended to foreclose preclusive effect because § 2000e-5 instructs the EEOC to give only "substantial weight" to unreviewed state-agency decisions). See also Kremer v. Chem. Constr. Corp., 456 U.S. 461, 470 n.7 (1982)(explaining "that unreviewed administrative determinations by state agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a State's own courts"). "[A] state court decision affirming a state agency determination is entitled to preclusive effect, so long as the state court proceeding provided the parties with a full and fair opportunity to litigate the case." Stone v. Dep't of Aviation, 290 F.App'x 117, 123 (10th Cir. 2008)(unpublished)(citing Kremer v. Chem. Constr. Corp., 456 U.S. at 485). Thus, review for collateral estoppel purposes "in a Title VII or ADA case is confined to the judgments of the state courts, and not the underlying agency decision." Stone v. Dep't of Aviation, 290 F.App'x at 123. The Court will therefore apply state collateral estoppel principles to the First Judicial Decision.

"[C]ollateral estoppel . . . prevents a party from re-litigating 'ultimate facts or issues actually and necessarily decided in a prior suit.'" Ullrich v. Blanchard, 142 N.M. at 839, 171 P.3d at 778

(citations omitted).  For collateral estoppel to apply, four elements must be met: "(1) the parties in the current action were the same or in privity with the parties in the prior action, (2) the subject matter of the two actions is different, (3) the ultimate fact or issue was actually litigated, and (4) the issue was necessarily determined."  Ullrich v. Blanchard, 142 N.M. at 839, 171 P.3d at 778 (quoting City of Sunland Park v. Macias, 134 N.M. 216, 220, 75 P.3d 816, 820 (Ct. App. 2003)).  The Defendants assert that Cordova is collaterally estopped from arguing the issue of pretext because the just-cause finding in the Second Amended Recommended Decision precludes a finding that their reason was legitimate and non-discriminatory.  See Motion for SJ at 12.  There can be no dispute that the parties before the Court are the same parties that appeared in state court.  The subject-matter of the claims before the Court and those before the NMSPB are different, because Cordova is asserting discrimination claims in this action, whereas, in the NMSPB proceeding, Cordova asserted that there was no just cause for her termination.  Thus, whether Cordova may proceed on her NMHRA claims depends upon the final two elements: (i) that pretext was "actually litigated"; and (ii) that the Second Amended Recommended Decision "necessarily determined" that pretext did not exist.  Ullrich v. Blanchard, 142 N.M. at 839, 171 P.3d at 778.

Here, the NMTRD appealed the NMSPB's decision to the First Judicial District, see Motion for SJ ¶ 7, at 5, and then Cordova filed petitions for writs of certiorari in the Court of Appeals of New Mexico and the Supreme Court of New Mexico, see Tr. at 5:5-8 (Kilgore).  The First Judicial District Decision suggests that the only issue that the state court reviewed was whether the NMSPB's additions to Judge Summerfield's Second Amended Recommended Decision were appropriate and in conformity with the law.  See First Judicial District Decision at 1-5.  Addressing that issue, the First Judicial District Decision reversed the NMSPB's Final Decision, because it

found that the NMSPB's additional findings of fact and conclusions of law were: (i) arbitrary and capricious; (ii) not supported by substantial evidence;  (iii) outside the scope of the Board's authority; and (iv) not in accordance with the law.  See First Judicial District Decision at 4.  Because the First Judicial District Decision does not address the just-cause finding or discuss any claim of discrimination, it is not clear that the Court may consider this finding by Judge Summerfield "affirmed," as the Tenth Circuit requires for the state administrative determination to have preclusive effect.  Stone v. Dep't of Aviation, 290 F.App'x at 123.

Furthermore, it is not clear that Cordova's claims of discrimination were litigated and necessarily included in Judge Summerfield's just-cause finding, such that the finding should bar her from arguing her discrimination claims before the Court.  In the administrative hearing, Cordova asserted that the NMTRD dismissed her in retaliation for filing a complaint with the EEOC and presented a witness to establish that the NMTRD took "different action in another license revocation case."  Second Amended Recommended Decision at 2, 14.  The Second Amended Recommended Decision discussed the testimony related to the other license revocation case, but determined that the case was distinguishable.  See Second Amended Recommended Decision at 14-15.  The Court of Appeals of New Mexico has held that the NMSPB is "without express or implied authority to adjudicate issues under the ADA or the NMHRA in a personnel proceeding."  Martinez v. N.M. State Eng'r Office, 129 N.M. 413, 419, 9 P.3d 657, 663 (Ct. App. 2000).  The Court of Appeals of New Mexico also stated that the "[Administrative Law Judge] as an evidentiary matter may decide whether the reasons offered for a termination are pretext for discrimination."  Martinez v. N.M. State Eng'r Office, 129 N.M. at 420, 9 P.3d at 664 (emphasis added).  Finally, the Court of Appeals of New Mexico concluded that "the ALJ and the Board acted appropriately by not determining issues

under the ADA" and declined to consider the parties' arguments regarding a possible ADA violation.  Martinez v. N.M. Eng'r Office, 129 N.M. at 420, 9 P.3d at 664.  Thus, the Court of Appeals of New Mexico has held that, although the NMSPB or an ALJ may decide whether an employer's given reason for discharge is pretextual, that analysis is not necessary to the just-cause determination, and the NMSPB or an ALJ may not determine whether there was a statutory violation of state and federal laws prohibiting discrimination.  See Martinez v. New Mexico State Eng'r Office, 129 N.M. at 419, 9 P.3d at 663.  The Court of Appeals of New Mexico has also held that the burden of demonstrating whether an issue was necessarily determined falls on the party seeking to preclude litigation of that issue and that, if the previous decision is unclear, subsequent litigation may proceed.  See State ex rel. Martinez v. Kerr-McGee Corp., 120 N.M. 118, 122, 898 P.2d 1256, 1260 (Ct. App. 1995)("The party seeking to preclude litigation of an issue has the burden of showing with clarity and certainty that the issue was actually and necessarily determined; if the basis of the prior decision is unclear, subsequent litigation may proceed.").  In re Consolidated Vista Hills Retaining Wall Litigation, 119 N.M. 542, 893 P.2d 438 (1995), the Supreme Court of New Mexico held that collateral estoppel did not apply, because a finding of negligence is not necessarily a finding of active conduct, which is what the party sought to preclude, and the Supreme Court of New Mexico could not conclude from the record whether the issue of active conduct was actually and necessarily determined.  See 119 N.M. at 548, 893 P.2d at 444.

The Tenth Circuit has held that, where the record did not contain the state court briefs and the only mention of pretext in a state court decision was the Colorado Court of Appeals' comment that "the Agency . . . failed to establish by a preponderance of the evidence, that it had any legitimate business reasons here," it could not say that those issues were "actually litigated by the parties."

Stone v. Dep't of Aviation, 290 F.App'x at 124.  In Cohon v. New Mexico Dep't of Health, 646 F.3d

717 (10th Cir. 2011), the Tenth Circuit stated that, where "the record reveals nothing, on the issue

of discrimination, let alone how it was 'actually litigated' or 'necessarily determined' in the

administrative hearing," there is no determination that can be given preclusive effect.  646 F.3d at

724.  The United States Court of Appeals for the Sixth Circuit, in a case where the plaintiff

challenged the preclusive effect of a "good cause" determination, held that the state agency

concluded that the plaintiff violated policies and procedures, but did not determine whether those

"stated justifications were the real reason behind [the plaintiff's] firing or just a facade under Title

VII's burden-shifting framework."  Hollimon v. Shelby Cnty. Gov't, 325 F.App'x 406, 410 (6th Cir.

2009)(unpublished)(emphasis original).  The Sixth Circuit also stated that the plaintiff's argument

that her termination was retaliatory did not establish collateral estoppel, because "the board never

decided one way or another whether retaliation was involved, and neither as a result did the state

trial and appellate courts."  Hollimon v. Shelby Cnty. Gov't, 325 F.App'x at 410.  The United States

Court of Appeals for the First Circuit, when confronted with the question whether a state agency's

determination that there was good cause for a teacher's non-renewal prevented the plaintiff from

attempting to prove that the non-renewal was unlawful, determined that the plaintiff was not

collaterally estopped, because the state agency did not "actually decide" whether the plaintiff's

discharge was discriminatory.  Thomas v. Contoocook Valley Sch. Dist., 150 F.3d 31, 38, 41 (1st

Cir. 1998).

        The NMTRD has not established that the discrimination issues, including pretext, which

Cordova seeks to argue before the Court, were "actually litigated" or "necessarily determined" in

the administrative hearing, or that the New Mexico state courts affirmed such determinations.  Stone

v. Dep't of Aviation, 290 F.App'x at 123.  The Court does not have before it the briefs that the parties submitted to the state court or the transcript of the proceedings.  The only evidence to show whether the state court affirmed or addressed any decision related to Cordova's discrimination claims is the First Judicial District Decision.  That opinion, however, addresses only the NMSPB's additional findings of fact.  See First Judicial District Decision ¶¶ 1-9, at 1-4.  Furthermore, none of Judge Summerfield's recommended conclusions of law address either Cordova's claim of retaliation or her claim that similarly situated persons were treated differently.  See Second Amended Recommended Decision ¶¶ 1-23, at 17-20.  The Tenth Circuit has held that, when a state court decision contains a limited reference to an issue, such a reference is insufficient to find that the parties "actually litigated" the issue.  Stone v. Dep't of Aviation, 290 F.App'x at 125.  In that case, there was some evidence that the state court had necessarily adjudicated whether there was a legitimate, non-discriminatory reason, because the state court decision repeated the hearing officer's finding that the defendant "failed to establish by a preponderance of the evidence that it had a legitimate business reason here."  Stone v. Dep't of Aviation, 290 F.App'x at 125.  The Tenth Circuit held, however, that collateral estoppel could not be used to preclude arguments that the defendant had a legitimate, non-discriminatory reason for refusing a transfer.  Stone v. Dep't of Aviation, 290 F.App'x at 125.  There is even less evidence that the state court considered or that the parties argued discrimination or retaliation before that court, because the First Judicial District Decision does not refer to those issues at all.  The First Circuit has noted that a plaintiff's claims of discrimination turn on the defendant's "actual motivation, as opposed to whether it could have terminated her."  Thomas v. Contoocook Valley Sch. Dist., 150 F.3d at 42 (emphasis original).  Similarly, in this case, no adjudicative body appears to have examined whether discrimination or

retaliation motivated the decision to discharge Cordova.  The Second Amended Recommended

Decision does not discuss whether the stated reason, that Cordova lied on her application, was

pretextual and, although it notes that Cordova alleged retaliation as a possible motive for her

discharge, it does not analyze that claim.  See Second Amended Recommended Decision at 2.  This

reference, alone, does not establish that the Second Amended Recommended Decision or the First

Judicial District Decision decided this issue or that it was litigated at the state court level.  In

Hollimon v. Shelby County Government, the Sixth Circuit stated:

> In summarizing the evidence, it is true, the board referenced testimony by Hollimon
> to the effect that her termination was retaliatory. . . .  But nothing comes of this
> reference.  The board never decided one way or another whether retaliation was
> involved, and neither as a result did the state trial and appellate courts.

325 F.App'x at 410.

Even looking solely to the Second Amended Recommended Decision, the Court cannot

determine that the discrimination claims and, more specifically, pretext, were necessarily determined

in the matter before Judge Summerfield.  The Second Amended Recommended Decision does not

discuss whether Cordova was discriminated against, only cursorily mentions her retaliation claim,

and does not analyze whether the given reason was pretextual.  Judge Summerfield determined that

Martinez was not similarly situated to Cordova, but, significantly, he never analyzed Salazar's

testimony that other similarly situated employees were not discharged.  See Second Amended

Recommended Decision at 12-17.  This case thus resembles the Supreme Court of New Mexico's

decision in In re Consolidated Vista Hills Litigation, because a just-cause finding is "not

necessarily" a finding that the given reason is not pretextual.  119 N.M. at 548, 893 P.2d at 444.

Furthermore, in their Motion for Summary Judgment, the Defendants make only conclusory

assertions that Judge Summerfield decided the pretext issue when he determined that their proffered

legitimate, non-discriminatory reason was just cause for Cordova's discharge.  See Motion for SJ at 10-13.  At the hearing, the Defendants again asserted that both the state and federal actions contain the same issues of fact.  See Tr. at 7:19-8:1 (Kilgore).  They argued that the question in each proceeding is whether the NMTRD acted appropriately and whether it had a legitimate, non-discriminatory reason for Cordova's termination.  See Tr. at 7:19-8:1 (Kilgore).  The Defendants did not, however, point to any portion of the Second Amended Recommended Decision where Judge Summerfield addressed whether the given reason was pretextual, or whether the decision was, in fact, based on Cordova's gender, race or disability.  The Court recently analyzed a similar issue in Hartnett v. Papa John's Pizza USA, Inc., No. 10-1105, 2011 WL 5220231 (D.N.M. Oct. 7, 2011)(Browning, J.), where the plaintiff asserted that the Workers' Compensation Judge's ("WCJ") determination, in a state proceeding, that Papa John's did not have "good cause" to discharge him precluded litigation on whether Papa John's reasonably believed that it had good cause to discharge him.  See 2011 WL 5220231, at *10.  The Court found that, where it was "unclear whether the WCJ was required to determine the reasonableness of Papa John's belief," and the Court could not locate an "explicit finding of reasonableness or unreasonableness despite a thorough opinion and compensation order," collateral estoppel did not apply because it was not necessarily determined. Hartnett v. Papa John's Pizza USA, Inc., 2011 WL 5220231, at *10.  Similarly, here, in the forty-one page Second Amended Recommended Decision, the Court finds no references to pretext, little analysis whether similarly situated employees were treated differently, and no discussion of possible discrimination.  The Court cannot say that the Defendants have shown "with clarity" that the Second Amended Recommended Decision determined that the given reason for Cordova's discharge was not pretextual.  In re Consol. Vista Hills Retaining Wall Litig., 119 N.M. at 548, 893 P.2d at 444.

Accordingly, because the record before the Court does not establish that "the state court proceeding provided the parties with a full and fair opportunity to litigate" Cordova's Title VII and ADA discrimination claims, Stone v. Dep't of Aviation, 290 F.App'x at 123, or that pretext was "necessarily determined" in the Second Amended Recommended Decision, Ullrich v. Blanchard, 142 N.M. at 839, 171 P.3d at 778, the Court concludes that the Second Amended Recommended Decision's just-cause finding does not conclusively establish that the Defendants had a legitimate, non-discriminatory reason for discharging and not transferring Cordova, or that Cordova is collaterally estopped from litigating her discrimination claims.[18]

**III.    THE INDIVIDUAL DEFENDANTS, BUT NOT THE NMTRD, ARE ENTITLED TO SUMMARY JUDGMENT ON THE TITLE VII NATIONAL ORIGIN DISCRIMINATION, TITLE VII SEX DISCRIMINATION, TITLE VII RETALIATION, AND ADA DISCRIMINATION CLAIMS; NEITHER THE INDIVIDUAL NOR THE NMTRD ARE ENTITLED TO SUMMARY JUDGMENT ON THE NMHRA DISCRIMINATION CLAIMS.**

Because Title VII and the ADA do not permit suits against individuals, the Court will enter summary judgment on those claims in the Individual Defendants' favor.  The Court cannot, however, determine whether Cordova exhausted her administrative remedies against the Individual Defendants, because no party has submitted the EEOC charge of discrimination.  The Court finds

---

[18]All parties appear to agree that Judge Summerfield's findings of fact, including the fact that the Defendants had just cause, have a preclusive effect in the case before the Court.  At the hearing, Cordova conceded that she cannot dispute that the Defendants can establish that she acted wrongly or that the ALJ found that she committed misconduct and stated "[t]hat's undisputed."  Tr. at 12:18-21 (Juarez).  The Court, responding to Cordova's concession, clarified that Cordova believed all of her claims survived, but that many of the facts would not be disputed because they were litigated in the state proceeding.  See Tr. at 13:7-10 (Court).  Cordova responded that the Court summary of her position was correct.  See Tr. at 13:12 (Juarez).  Because some facts are not disputed and no argument on this issue was raised at the hearing, the Court need not and will not decide whether the parties are barred from relitigating some or all Judge Summerfield's findings of facts.  The Court also need not decide what effect this concession may have, if any, on Cordova's case, including whether the case should proceed under Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003)(establishing a mixed motive analysis for discrimination claims).

that Cordova has demonstrated that there are genuine issues of material fact whether the Defendants' proffered reason for Cordova's discharge are pretextual. The Court will not therefore enter summary judgment in favor of the Defendants on the discrimination and retaliation claims brought under Title VII, the ADA, and the NMHRA.

**A.    THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON CORDOVA'S FEDERAL DISCRIMINATION CLAIMS.**

At the hearing, the Court asked whether all of the counts were asserted against the Individual Defendants. See Tr. 25:25-26:1 (Court). The Defendants responded that it is difficult to tell, because all of the counts say "the defendants." Tr. at 26:203 (Kilgore). Personal capacity suits, or suits against individual supervisors, are inappropriate under Title VII and the ADA. See Howard v. Cnty. of Las Animas in Colo., 212 F.App'x 711, 712 (10th Cir. 2006)(unpublished)(holding that there are no individual capacity suits under Title VII); Butler v. City of Prairie Vill., Kan., 172 F.3d 736, 744 (10th Cir. 1999)("Accordingly, we now hold that the ADA precludes personal capacity suits against individuals who do not otherwise qualify as employers under the statutory definition."). Because neither Title VII nor the ADA permit suits against individuals, the Court will grant summary judgment in the Individual Defendants' favor on all of the federal discrimination claims brought under Title VII and the ADA.

The Defendants argued, at the hearing, that Cordova did not exhaust her administrative remedies against the Individual Defendants under the NMHRA. See Tr. at 26:7-9 (Kilgore). The Defendants asserted that the Individual Defendants were not named in the charge of discrimination. See Tr. at 26:9-14 (Kilgore). The Defendants did not raise administrative exhaustion as a basis for summary judgment in their Motion for Summary Judgment. Cordova responded that the Court should not decide this issue, because a similar case was recently certified to the Supreme Court of

New Mexico and that this issue is one for that court to decide.  See Tr. at 26:19-24 (Juarez).

Cordova argued that there is cross-filing between the State of New Mexico and the EEOC: if an

individual files a complaint with the EEOC, then it is considered filed for the purposes of the

NMHRA as well.  See Tr. at 26:25-27:2 (Juarez).  Cordova explained that a problem arises when

a plaintiff files with the EEOC, because the Title VII does not permit a plaintiff to name individuals,

and there is no place on the EEOC charging document to name individuals, but the NMHRA's form

allows a plaintiff to name individuals.  See Tr. at 27:3-5 (Juarez).

        The Supreme Court of New Mexico has held that "the exhaustion of administrative remedies

is a prerequisite to suit under the NMHRA . . . , and a failure to exhaust administrative remedies may

mean that the district court lacks subject-matter jurisdiction."  Mitchell-Carr v. McLendon, 127

N.M. 282, 288, 980 P.2d 65, 71 (1999).  In Campos v. Las Cruces Nursing Center, No. 11-0096,

2011 WL 5238921 (D.N.M. Sept. 30, 2011)(Browning, J.), the Court held:

> Given that under Title VII a person may not name a supervisor as a party in a
> charging instrument, but that a supervisor may be a respondent under the NMHRA,
> the Supreme Court of New Mexico would likely recognize that complaining about
> a person in the text of a charge would be sufficient to name them as a respondent in
> a case.  Otherwise, a person who chooses to file a charge of discrimination with the
> EEOC could almost never name a supervisor as a respondent.

2011 WL 5238921, at *13.  Neither party introduced the EEOC charge of discrimination as evidence

the Court should consider.  Furthermore, the Defendants did not raise this issue in their Motion for

Summary Judgment, waiting to bring the matter to the Court's attention at the hearing, when

Cordova was unprepared to respond that argument.  While "defenses challenging [the C]ourt's

jurisdiction may be raised at any time," Edwards v. Doe, 331 F.App'x 563, 567 (10th Cir.

2009)(unpublished), in this case, neither party has submitted the information necessary for the Court

to analyze this issue.  Additionally, counsel for the Defendants seemed unsure what Cordova alleged

in the EEOC charge of discrimination and qualified her argument with phrases such as "I'm pretty

sure" and "I think that they were not named." Tr. at 26:7-14 (Kilgore).  Counsel for the Defendants

also offered to do further "motion work" on the issues surrounding the Individual Defendants with

respect to either administrative exhaustion or state qualified immunity.  Tr. at 26:11-12 (Kilgore).

To date, however, the Defendants have provided no new information since the hearing.  Moreover,

Cordova represented at the hearing that this issue, whether a plaintiff can exhaust administrative

remedies against an individual defendant when the plaintiff files a complaint with the EEOC, was

recently certified to the Supreme Court of New Mexico.  See Tr. at 26:19-27:19 (Juarez).  If the

Defendants believe that this argument has merit and that the Court lacks subject-matter jurisdiction,

then the Defendants should file a motion arguing that point and provide the Court with the EEOC

charge of discrimination so that the Court may properly analyze the issue.  While Cordova has the

burden of proof on this issue, see Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002)("The burden

of establishing subject-matter jurisdiction is on the party asserting jurisdiction."), it would be unfair

for the Court to decide these claims or jurisdictional questions when the Defendants raised the issue

only at the hearing.  Accordingly, the Court will not, at this time, grant summary judgment in the

Individual Defendant's favor on the NMHRA claims.

> **B.   CORDOVA HAS DEMONSTRATED THAT THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDING HER TITLE VII NATIONAL ORIGIN CLAIMS.**

The Defendants cite Orr v. City of Albuquerque, 417 F.3d 1144 (10th Cir. 2005), for the

proposition that disparate treatment employment discrimination claims under Title VII are subject

to McDonnell Douglas Corp. v. Green's burden-shifting analysis.  See Motion for SJ at 11.  Under

McDonnell Douglas Corp. v. Green, a plaintiff must establish a prima-facie case of discrimination.

See 411 U.S. at 802. The elements of a prima-facie case under Orr v. City of Albuquerque include: (i) membership in a protected class; (ii) adverse employment action; and (iii) disparate treatment among similarly situated employees. See 417 F.3d at 1149. Cordova uses the prima-facie elements set forth under Goodwin v. Gen. Motors Corp., 275 F.3d 1005 (10th Cir. 2002), which requires that a plaintiff prove that: (i) she is a member of a protected class; (ii) her job performance was satisfactory; (iii) her employer took an adverse employment action against her; and (iv) similarly situated employees were treated differently. See 275 F.3d at 1012. If the plaintiff establishes a prima-facie case, then the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason. See McDonnell Douglas Corp. v. Green, 411 U.S. at 802. The Defendants assert that Cordova was terminated and was not transferred to the lateral position for which she applied, because Cordova's inaccurate answers to the Interview Guide questions constituted misconduct. See Motion for SJ at 12. After the articulation of a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to establish pretext. See McDonnell Douglas Corp. v. Green, 411 U.S. at 804.

Under either the State Defendant's or her own formulation of the prima-facie standard, Cordova has established a prima-facie case of national origin discrimination. Cordova is Hispanic and is thus a member of a protected class. Cordova has established that her job performance was satisfactory, meeting the second element of the Goodwin v. Gen. Motors Corp. formulation of the prima-facie case,. The Defendants did not argue that Cordova's job performance was unsatisfactory. Nevertheless, Cordova introduced evidence that she was never reprimanded and her annual reviews were exemplary. See Affidavit ¶ 5(i), at 7; Response ¶ 5(i), at 9. The Second Amended Recommended Decision also noted that Cordova was "performing satisfactorily," her "work

-62-

performance was good," and her "supervisor wanted to keep her." Second Amended Recommended

Decision at 17.   Cordova's sworn statement that her reviews were exemplary is sufficient to

establish this element of the prima-facie case.  See Nguyen v. Gambro BCT, Inc., 242 F.App'x 483,

488 (10th Cir. 2007)(unpublished)("Moreover, Nguyen worked at Gambro for almost three years

before being terminated and testified that her supervisors rated her work as 'excellent.'  This

evidence is sufficient to demonstrate job qualification.").[19]   Cordova asserts two adverse

employment actions as the basis for her national origin discrimination claim: (i) the denial of her

lateral transfer; and (ii) her discharge.  See First Amended Compl. ¶¶ 38-40, 50-52, at 7, 9.  There

is no doubt that Cordova's termination is an adverse employment action.  See Roberts v. Roadway

Express, Inc., 149 F.3d 1098, 1104 (10th Cir. 1998)("Actions such as suspensions or terminations

are by their nature adverse.").  Although it appears that the lateral transfer was a "purely lateral

---

[19]At the hearing, the Defendants argued that Cordova could not show that she had
satisfactory performance, because she committed misconduct.  See Tr. at 6:20-24 (Kilgore).  While
the Tenth Circuit has recognized that a district court may consider a plaintiff's evidence of pretext
at the prima-facie stage, see Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1218 (10th Cir. 2003),
to consider the Defendants' proffered legitimate, non-discriminatory reason for Cordova's discharge
and denial of transfer at the prima-facie stage would be improper.  In EEOC v. Horizon/CMS
Healthcare Corp., the Tenth Circuit stated that is has previously held that a district court "erred when
it considered the defendant's proffered reason for the plaintiffs' discharge in evaluating the
plaintiff's prima facie case" and that "a defendant cannot defeat a plaintiff's prima facie case by
articulating the reasons for the adverse employment action."  220 F.3d at 1193 (citing MacDonald
v. E. Wyo. Mental Health Ctr., 941 F.2d 1115, 1118-21 (10th Cir. 1991)).  Alternatively, even if the
Court could consider the Defendants' argument, it creates only a genuine issue of material fact
whether Cordova performed her work satisfactorily because Cordova has introduced evidence that
she was performing her work well and the Defendants contradict that evidence.  The Court must
resolve such factual disputes in Cordova's favor at the summary judgment stage, because she is the
non-moving party.  See Hunt v. Cromartie, 526 U.S. at 551 (stating that the court must resolve all
reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the
light most favorable to the non-moving party).  Accordingly, even if the Court were to consider the
Defendants' proffered legitimate, non-discriminatory reason as evidence to dispute Cordova's
argument prima-facie case, that evidence creates only a disputed issue of fact, which must go to the
jury.

transfer" from one Revenue Agent Supervisor position to another, which would not constitute an adverse employment action, Wheeler v. BNSF Ry. Co., 418 F.App'x 738, 746-47 (10th Cir. 2011)(unpublished),[20] the parties did not submit information regarding these positions so that the Court could analyze whether the transfer was purely lateral and whether the denial would constitute an adverse employment action.  Thus, the Court will assume, as the Defendants did in their Motion for Summary Judgment, that the denial of the lateral transfer could satisfy the prima-facie case.  The Defendants argued:

> Thus, even assuming, for the sake of argument only, that Plaintiff could set forth a prima facie case of employment discrimination or retaliation for the denial of her lateral transfer -- which Defendants vigorously dispute -- Judge Summerfield's Second Amended Recommended Decision conclusively establishes that NMTRD had a legitimate, non-discriminatory, and non-retaliatory reasons for these adverse employment actions.

Motion for SJ at 12.[21]

_____

[20]In Sanchez v. Denver Public Schools, 164 F.3d 527 (10th Cir. 1998), the Tenth Circuit held that, "[i]f a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer [an] adverse employment action."  164 F.3d at 532 n.6.  Furthermore, the Tenth Circuit stated that actions presenting nothing more than "mere inconvenience or alteration of responsibilities" do not constitute adverse employment actions. Sanchez v. Denver Pub. Schs., 164 F.3d 532.  There, the Tenth Circuit rejected a teacher's argument that a reassignment from teaching fourth-grade to teaching second-grade was an adverse employment action.  See Sanchez v. Denver Pub. Schs., 164 F.3d at 532.  In Wheeler v. BNSF Ry.Co., the Tenth Circuit held that a failure to transfer an employee from Lincoln, Nebraska to Topeka, Kansas did not constitute an adverse employment action.  See 418 F.App'x at 746.  In so holding, the Tenth Circuit relied on the fact that the position the plaintiff sought had the same salary, benefits, and duties as her position in Lincoln.  See Wheeler v. BNSF Ry. Co., 418 F.App'x at 746; Mirzai v. State of New Mexico Gen. Servs. Dep't, 506 F.Supp.2d at 787 (finding that a transfer did not constitute an adverse employment action where the plaintiff did not allege that it "was anything more than a mere inconvenience or alteration of job responsibilities").

[21]Although the Defendants assert that they vigorously dispute whether Cordova can establish a prima-facie case for her discrimination and retaliation claims, see Motion for SJ at 12, the Defendants do not advance any arguments which dispute Cordova's prima-facie case for these claims.  Rather, the Defendants assume, for the purposes of the motion, that Cordova has established

Finally, under the last element of each prima-facie case, Cordova has established that other similarly situated employees were treated differently.   The Second Amended Recommended

---

her prima-facie case for these claims and move on to discuss the other steps of the <u>McDonnell Douglas Corp. v. Green</u> framework -- their legitimate, non-discriminatory reason for Cordova's discharge and whether Cordova can establish pretext.  <u>See</u> Motion for SJ at 12-13.  The Defendants spend one paragraph discussing how the <u>McDonnell Douglas Corp. v. Green</u> framework applies to the facts of this case.  <u>See</u> Motion for SJ at 12-13.  They do not differentiate between Cordova's several discrimination claims.  In that paragraph, the Defendants' only reference to the prima-facie cases for the Title VII national origin, Title VII sex discrimination, Title VII retaliation, ADA discrimination, and NMHRA discrimination claims is:

> Thus, even assuming, for the sake of argument only, that Plaintiff could set forth a <u>prima facie</u> case of employment discrimination or retaliation for the denial of her lateral transfer -- which Defendants vigorously dispute -- Judge Summerfield's Second Amended Recommended Decision conclusively establishes that NMTRD had a legitimate, non-discriminatory, and non-retaliatory reasons for these adverse employment actions.

Motion for SJ at 12.  As the Defendants concede, the moving party bears the initial burden of establishing that no genuine issues of fact exist.  <u>See</u> Motion for SJ at 6 (citing <u>Nat'l Union Fire Ins. Co. v. Emhart Corp.</u>, 11 F.3d 1524, 1528 (10th Cir. 1993)).  The Defendants assert that they "vigorously dispute" that Cordova has established her prima-facie case for each discrimination claim, but this statement fails to demonstrate "that there is an absence of evidence to support the nonmoving party's case."  <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d at 891.  The moving party has "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law."  <u>Trainor v. Apollo Metal Specialties, Inc.</u>, 318 F.3d 976, 979 (10th Cir. 2003).  To meet the burden of production, the movant "need only point to those portions of the record that demonstrate an absence of genuine issue of material fact given the relevant substantive law."  <u>Diaz v. Paul J. Kennedy Law Firm</u>, 289 F.3d 671, 674 (10th Cir. 2002).  Furthermore, in <u>Kerr v. Valdez</u>, 55 F.App'x 491 (10th Cir. 2002)(unpublished), the Tenth Circuit recognized that where the defendants do not argue that a plaintiff failed to make a prima-facie case, a "district court [does] not err in assuming such a case ha[s] been established and in proceeding to defendants' burden to show a nondiscriminatory reason for its . . . decision."  55 F.App'x at 495.  The Court is not required to make the Defendants' arguments for them.  <u>See</u> <u>Aragon v. San Jose Ditch Ass'n</u>, No. 10-0563, 2011 WL 6013284, at *26 (D.N.M. Nov. 22, 2011)(Browning, J.)(citing <u>Terpening v. Brett</u>, 222 F.Supp.2d 1135, 1138 n.2 (C.D. Ill. 2002)).  Here, the Defendants have pointed to no portions of the record establishing an absence of evidence supporting Cordova's claim, and other than one reference, which appears to assume that the prima-facie case is met, the Defendants do not discuss her prima-facie burden.  Accordingly, in the absence of evidence or argument on Cordova's prima-facie cases, the Court will find for the purposes of this motion, as the Defendants appear to assume, that Cordova has met her prima-facie burden for each discrimination claim.

Decision establishes that Salazar testified that similarly situated employees were not terminated and maintained their employment despite misstatements.  <u>See</u> Second Amended Recommended Decision at 24.  Furthermore, Cordova presented specific information related to Edwin Bush, an Anglo male who had a similar position with the NMTRD.  <u>See</u> Affidavit ¶ 5(h), at 7; Response ¶ 5(h), at 8.  Bush was caught falsifying records and was not terminated, but moved to a lower position.  <u>See</u> Affidavit ¶ 5(h), at 7; Response ¶ 5(h), at 8.  Cordova also presented information that the position for which she applied was filled by an Anglo woman.  <u>See</u> Affidavit ¶ 5(h), at 7; Response ¶ 5(h), at 8.  This evidence is sufficient to establish Cordova's de minimis burden to demonstrate circumstances giving rise to an inference of discrimination in her prima-facie case.  <u>See</u> <u>Plotke v. White</u>, 405 F.3d 1092, 1101 (10th Cir. 2005).

The Defendants assert that they have a legitimate, non-discriminatory reason for denying Cordova's lateral transfer and discharging her -- that Cordova committed misconduct when she stated on the Interview Guide questionnaire that she had never been arrested for driving under the influence of alcohol or had her license revoked.  <u>See</u> Motion for SJ at 12.  The burden thus shifts to Cordova to establish pretext.  A plaintiff may demonstrate pretext by providing evidence that "the proffered rationale is false, or that the plaintiff was treated differently from similarly-situated employees."  <u>Swackhammer v. Sprint/United Mgmt. Co.</u>, 493 F.3d 1160, 1167 (10th Cir. 2007)(citation omitted).  Cordova has introduced significant evidence to show that she was treated differently and to undermine the Defendants' proffered reason for her termination.  Cordova made some allegations that Hull, Velasquez, Bush, and Lujan committed worse infractions, and either were permitted to step down from their positions or were moved to another area.  <u>See</u> Letter at 2; Affidavit ¶ 5(e), at 6-7.  More specifically, Cordova's affidavit states that Bush, an Anglo male in

a similar position, was also accused of falsifying documents and was moved to another area rather

than terminated. <u>See</u> Affidavit ¶ 5(h), at 7; Response ¶ 5(h), at 8. Cordova introduced evidence that

her job performance was exemplary and that the person who received the position for which she

applied was an Anglo woman who had been charged with felony cocaine possession. <u>See</u> Affidavit

¶ 5(i), at 9; Case Detail at 1; Response ¶ 5(i), at 9.  Finally, Judge Summerfield's summary of

Salazar's testimony states:

> Salazar says there is no set policy as to what disciplinary action to take in cases of
> a misstatement by a current policy, and in one previous case he could recall, Salazar
> says an employee resigned in lieu of a proposed dismissal action.  In another similar
> case, Salazar recalls an employee was allowed to maintain employment.

Second Amended Recommended Decision at 24.  This evidence demonstrates that similarly situated

employees were treated differently, raising an inference of discrimination and is sufficient to show

that there are genuine issues of material fact with respect to pretext.

Cordova's evidence is similar to the evidence that the Tenth Circuit considered in <u>Trujillo</u>

<u>v. PacifiCorp</u>, 524 F.3d 1149 (10th Cir. 2008), where the Tenth Circuit found that the plaintiff had

demonstrated a genuine issue of material fact whether the employer's stated reason was pretextual.

In that case, the plaintiffs demonstrated that similarly situated employees were not discharged, but

given temporary disability leave or given days without pay, for similar misconduct.  <u>See</u>  <u>Trujillo</u>

<u>v. PacifiCorp</u>, 524 F.3d at 1159.  Cordova's allegations and Salazar's testimony that similarly

situated employees were permitted to resign or were demoted, rather than discharged, resembles the

evidence that the plaintiffs in <u>Trujillo v. PacifiCorp</u> set forth.  Both cases demonstrate that, while

other employees received some discipline, the level of discipline was much higher for the Trujillos,

in that case, and Cordova, in the case before the Court.  Moreover, the specific allegations related

to Bush also demonstrate that a similarly situated employee who "violated work rules of comparable

seriousness" was treated differently than Cordova.  Swackhammer v. Sprint/United Mgmt. Co., 493

F.3d at 1167.  As the Tenth Circuit recognized in Shaw v. Tulsa Dynaspan Arrow Concrete, 408

F.App'x 177 (10th Cir. 2011)(unpublished), a comparison to a single individual can be enough to

establish pretext.  In that case, the Tenth Circuit held that "Mr. Shaw produced evidence that he was

treated differently from Mr. Overbey, a similarly situated, nonprotected employee who violated a

work rule of comparable seriousness" and that this evidence was sufficient to create a disputed

issues of fact whether the reason for his termination was pretextual.  Shaw v. Tulsa Dynaspan Arrow

Concrete, 408 F.App'x at 181.  Particularly persuasive  here is that Salazar, the person who decided

to discharge Cordova, knew of at least two similarly situated employees who were not terminated

for similar misstatements.  This evidence undermines the Defendants' stated reason for Cordova's

discharge, and their denial of her transfer tends to show pretext and "permits an inference that the

employer acted for discriminatory reasons."  Clayton v. Vanguard Car Rental U.S.A., Inc., 761

F.Supp.2d 1210, 1264 (D.N.M. 2010)(Browning, J.)(quoting Bryant v. Farmers Ins. Exch., 432 F.3d

at 1125).

Because Cordova has established a prima-facie case of national origin discrimination and

demonstrated that there are genuine issues of material fact whether the Defendants' proffered reason

for her termination was pretextual, the evidence permits an inference that the Defendants acted for

discriminatory reasons.  Accordingly, the Court will deny the Motion for Summary Judgment on

Cordova's Title VII national origin discrimination claims.

### C.   CORDOVA HAS DEMONSTRATED THAT THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDING HER TITLE VII SEX DISCRIMINATION CLAIMS.

Following the same formulations of the prima-facie case, Cordova has also satisfied her

burden with respect to her Title VII sex discrimination claims.  Cordova has established that: (i) she is female; (ii) as discussed with respect to her Title VII national origin discrimination claims, her job performance was satisfactory; (iii) she suffered an adverse employment action, because she was discharged and because she was denied her transfer, which the Defendants and the Court assume qualifies as an adverse employment action, see Motion for SJ at 12; and (iv) similarly situated employees were treated differently.  This evidence is sufficient to establish Cordova's de minimis burden to demonstrate circumstances giving rise to an inference of discrimination in her prima-facie case.  See Plotke v. White, 405 F.3d 1092, 1101 (10th Cir. 2005).

The Defendants assert that it discharged Cordova for a legitimate, non-discriminatory reason -- her misconduct.  See Motion for SJ at 12.  Most of the evidence that Cordova submits in support of her national origin discrimination claims also supports her sex discrimination claims, because the examples she used, and in particular the Bush case, included Anglo men.  Moreover, Martinez, another NMTRD employee was given two weeks to resolve his license suspension, even though the New Mexico Department of Motor Vehicles treats suspensions and revocations similarly. See Affidavit ¶ 5(d), at 4; Response ¶ 5(d), at 6.  This evidence, combined with the evidence discussed earlier is sufficient to show a genuine issue of material fact whether the Defendants' proffered reason for Cordova's termination is pretextual.  Furthermore, the Tenth Circuit has held that, when a plaintiff presents evidence of pretext on one claim, she has created a factual issue as to whether the given reason is pretextual, and summary judgment on other discrimination claims is inappropriate. See Shaw v. Tulsa Dynaspan Arrow Concrete, 408 F.App'x at 183 ("As we discussed above in the pretext analysis of the Title VII and [42 U.S.C.] § 1981 claims, Mr. Shaw has presented evidence that creates a factual dispute as to whether the proffered reason for his termination was

pretextual.  Summary judgment on his retaliation claim is therefore inappropriate.").  See also Clayton v. Vanguard Car Rental U.S.A., Inc., 761 F.Supp.2d at 1264 ("Clayton need not show -- at this stage -- that there was a discriminatory reason for her termination; she only need show that there is a genuine issue of material fact whether the proffered reason was pretextual.").

Because Cordova has established a prima-facie case of sex discrimination and demonstrated that there are genuine issues of material fact whether the Defendants' proffered reason for her termination was pretextual, the evidence permits an inference that the Defendants acted for discriminatory reasons.  Accordingly, the Court will deny the Motion for Summary Judgment on Cordova's Title VII sex discrimination claims.

### D.    CORDOVA HAS DEMONSTRATED THAT THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDING HER TITLE VII RETALIATION CLAIMS.

The Defendants cite Pastran v. K-Mart Corp., 210 F.3d 1201 (10th Cir. 2000), for the proposition that retaliation claims under Title VII are subject to the burden-shifting analysis of McDonnell Douglas Corp. v. Green.  See Motion for SJ at 11.  The prima-face case for a retaliation claim under Pastran v. K-Mart Corp. requires that a plaintiff demonstrate that: (i) she engaged in protected opposition to discrimination; (ii) her employer subjected her to an adverse employment action subsequent to the protected activity; and (iii) a causal connection exists between the protected activity and the adverse employment action.  See 210 F.3d at 1205.  Cordova does not offer a separate prima-facie formulation for her Title VII retaliation claim.  See Response at 2.  Neither the Defendants nor Cordova, specifically address the prima-facie case for Cordova's Title VII retaliation claim.  Because the Defendants assume for the sake of argument that Cordova has met her prima-case of retaliation for her termination or denial of her transfer, and because the Defendants do not

set forth any arguments disputing that Cordova may set forth a prima-facie case of discrimination,

the Court will also assume for the purposes of the Motion for Summary Judgment that Cordova has

satisfied the elements of a prima-facie case of Title VII retaliation.  The Defendants state:

> Thus, even assuming for the sake of argument only, that Plaintiff could set forth a
> prima facie case of employment discrimination or retaliation for her termination or
> for the denial of her lateral transfer -- which Defendants vigorously dispute -- Judge
> Summerfield's Second Amended Recommended Decision conclusively establishes
> that NMTRD had a legitimate, non-discriminatory, and non-retaliatory reason for
> these adverse employment actions.

See Motion for SJ at 12.

The Defendants assert that it discharged Cordova for a legitimate, non-discriminatory reason

-- her misconduct.  See Motion for SJ at 12.  The Tenth Circuit has held that, when a plaintiff

presents evidence of pretext on one claim, she has created a factual issue as to whether the given

reason is pretextual, and summary judgment on other discrimination claims is inappropriate.  See

Shaw v. Tulsa Dynaspan Arrow Concrete, 408 F.App'x at 183 ("As we discussed above in the

pretext analysis of the Title VII and [42 U.S.C.] § 1981 claims, Mr. Shaw has presented evidence

that creates a factual dispute as to whether the proffered reason for his termination was pretextual.

Summary judgment on his retaliation claim is therefore inappropriate.").  See also Clayton v.

Vanguard Car Rental U.S.A., Inc., 761 F.Supp.2d at 1264 ("Clayton need not show -- at this stage --

that there was a discriminatory reason for her termination; she only need show that there is a genuine

issue of material fact whether the proffered reason was pretextual.")(citations omitted).  The

evidence that Cordova submitted which demonstrates that there is a genuine issue of material fact

with respect to the Defendants' proffered reason for her termination and the denial of her transfer

apply with equal force to Cordova's retaliation claims.

Because the Defendants and the Court assume for the purposes of this motion that Cordova

has established a prima-facie case of retaliation, and because Cordova has demonstrated that there are genuine issues of material fact whether the Defendants' proffered reason for her termination was pretextual, the evidence permits an inference that the Defendants acted for discriminatory reasons. Accordingly, the Court will deny the Motion for Summary Judgment on Cordova's Title VII retaliation claims.

### E.   CORDOVA HAS DEMONSTRATED THAT THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDING HER ADA CLAIMS.

The Defendants cite Raytheon Co. v. Hernandez, 540 U.S. 44 (2003), for the proposition that disparate treatment employment discrimination claims under the ADA are subject to the McDonnell Douglas Corp. v. Green's burden-shifting analysis. See Motion for SJ at 11. Neither party set forth a test for a prima-facie case under the ADA. See Motion for SJ at 11; Response at 2. The Tenth Circuit recently stated the prima-face case under the ADA requires that a plaintiff show that: (i) she was a disabled person, as the ADA defines that term; (ii) she was qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (iii) she was discharged because of her disability. See Carter v. Pathfinder Energy Servs., Inc., No. 10-8112, 2011 WL 5222882, at *5 (10th Cir. Nov. 3, 2011); MacKenzie v. City and Cnty. of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005); Vigil v. City of Espanola, 2008 WL 6045546, at *9. The Defendants assume, however, for the purposes of the Motion for Summary Judgment that Cordova has satisfied the prima-facie burden for all of her employment discrimination claims. See Motion for SJ at 12. Thus, the Court will also assume, for the purposes of this motion, that Cordova has satisfied the elements of a prima-facie case under the ADA.

The Defendants assert that it discharged Cordova for a legitimate, non-discriminatory reason -- her misconduct. See Motion for SJ at 12. The Tenth Circuit has held that, when a plaintiff

presents evidence of pretext on one claim, she has created a factual issue whether the given reason is pretextual, and summary judgment on other discrimination claims is inappropriate.  See Shaw v. Tulsa Dynaspan Arrow Concrete, 408 F.App'x at 183 ("As we discussed above in the pretext analysis of the Title VII and [42 U.S.C.] § 1981 claims, Mr. Shaw has presented evidence that creates a factual dispute as to whether the proffered reason for his termination was pretextual. Summary Judgment on his retaliation claim is therefore inappropriate.").  See also Clayton v. Vanguard Car Rental U.S.A., Inc., 761 F.Supp.2d at 1264 ("Clayton need not show -- at this state -- that there was a discriminatory reason for her termination; she only need show that there is a genuine issue of material fact whether the proffered reason was pretextual.").  The evidence that Cordova submitted which demonstrates that there is a genuine issue of material fact with respect to the Defendants' proffered reason for her termination and the denial of her transfer apply with equal force to Cordova's ADA claims.

Because the Defendants and the Court assume for the purposes of this motion that Cordova has established a prima-facie case of retaliation, and because Cordova has demonstrated that there are genuine issues of material fact whether the Defendants' proffered reason for her termination was pretextual, the evidence permits an inference that the Defendants acted for discriminatory reasons. Accordingly, the Court will deny the Motion for Summary Judgment on Cordova's Title VII retaliation claims.

## F.   CORDOVA HAS DEMONSTRATED THAT THERE ARE GENUINE ISSUES OF MATERIAL FACT REGARDING HER NMHRA CLAIMS.

The Supreme Court of New Mexico applies the framework that the Supreme Court of the United States established in McDonnell Douglas Corp. v. Green "[w]hen considering a violation of the NMHRA."  Juneau v. Intel Corp., 139 N.M. 12, 15, 127 P.3d 548, 551 (2005).  The Supreme

Court of New Mexico has stated that, "when considering claims under the NMHRA, we may look at federal civil rights adjudication for guidance in interpreting the NMHRA.  Our reliance on the methodology developed in the federal courts, however, should not be interpreted as an indication that we have adopted federal law as our own."  Ocana v. Am. Furniture Co., 135 N.M. 539, 549, 91 P.3d 58, 68 (2004)(internal quotation marks omitted)(citations omitted).  The Defendants, in their Motion for Summary Judgment, recognized that the NMHRA is subject to McDonnell Douglas Corp. v. Green's  burden-shifting analysis.  See Motion for SJ at 11.  Cordova's Response does not discuss her NMHRA claims.  In Clayton v. Vanguard Car Rental U.S.A., Inc., the Court held that because

> the parties have incorporated their arguments regarding Clayton's federal discrimination claims into their arguments regarding Clayton's state discrimination claims, and because the Supreme Court of New Mexico looks to federal adjudication when it interprets the NMHRA, the Court will not grant summary judgment on Clayton's claims under the NMHRA as it has denied summary judgment on Clayton's federal discrimination claims.

761 F.Supp.2d at 1265.  The Court finds that it should reach the same conclusion here, because the Defendants have recognized that the McDonnell Douglas Corp. v. Green framework applies with equal force to Cordova's NMHRA claims and because the Supreme Court of New Mexico looks to federal adjudication when it interprets the NMHRA.  Because the Court has determined that summary judgment in the Defendants' favor on the Title VII claims of national origin, sex, disability, and retaliation would not be appropriate, the Court finds that summary judgment in the Defendants' favor on the corresponding NMHRA claims of national origin, sex, disability, and retaliation is also inappropriate.

Because the Court found that the ADEA does not abrogate sovereign immunity, the Court did not discuss Cordova's age-based discrimination claim.  Cordova also asserted her age-based

discrimination claim under the NMHRA.  See First Amended Compl. ¶¶ 45, 57, at 8, 10.  Because

the Supreme Court of New Mexico looks to federal law when interpreting the NMHRA and uses the

McDonnell Douglas Corp. v. Green framework, the Court will look to federal law to supply the

prima-facie case for Cordova's age discrimination claim under the NMHRA.  In a termination case,

a plaintiff can establish a prima-facie case of age discrimination by showing that he or she was:

(i) "within the protected class of individuals 40 or older;" (ii) "performing satisfactory work;"

(iii) "terminated from employment;" and (iv) "replaced by a younger person, although not

necessarily one less than 40 years of age."  Adamson v. Multi Cmty. Diversified Servs., Inc., 514

F.3d at 1146.   Neither the Defendants nor Cordova specifically address Cordova's age

discrimination claims.  The Defendants assume, however, for the purposes of the Motion for

Summary Judgment that Cordova has satisfied the prima-facie burden for all of her employment

discrimination claims.  Motion for SJ at 12.  The Defendants state:

> Thus, even assuming for the sake of argument only, that Plaintiff could set forth a
> prima facie case of employment discrimination or retaliation for her termination or
> for the denial of her lateral transfer -- which Defendants vigorously dispute -- Judge
> Summerfield's Second Amended Recommended Decision conclusively establishes
> that NMTRD had a legitimate, non-discriminatory, and non-retaliatory reason for
> these adverse employment actions

Motion for SJ at 12.  Thus, the Court will also assume, for the purposes of this motion, that Cordova

has satisfied the elements of a prima-facie case for an age discrimination claim under the NMHRA.

The Defendants assert that it discharged Cordova for a legitimate, non-discriminatory reason

-- her misconduct.  See Motion for SJ at 12.  The Tenth Circuit has held that, when a plaintiff

presents evidence of pretext on one claim, she has created a factual issue whether the given reason

is pretextual, and summary judgment on other discrimination claims is inappropriate.  See Shaw v.

Tulsa Dynaspan Arrow Concrete, 408 F.App'x at 183 ("As we discussed above in the pretext

analysis of the Title VII and [42 U.S.C.] § 1981 claims, Mr. Shaw has presented evidence that creates a factual dispute as to whether the proffered reason for his termination was pretextual. Summary judgment on his retaliation claim is therefore inappropriate.").  See also Clayton v. Vanguard Car Rental U.S.A., Inc., 761 F.Supp.2d at 1264 ("Clayton need not show -- at this stage -- that there was a discriminatory reason for her termination; she only need show that there is a genuine issue of material fact whether the proffered reason was pretextual.").  The evidence that Cordova submitted which demonstrates that there is a genuine issue of material fact with respect to the Defendants' proffered reason for her termination and the denial of her transfer apply with equal force to Cordova's age discrimination claims.  Because the Defendants and the Court assume for the purposes of this motion that Cordova has established a prima-facie case of age discrimination, and because Cordova has demonstrated that there are genuine issues of material fact whether the Defendants' proffered reason for her termination was pretextual, the evidence permits an inference that the Defendants acted for discriminatory reasons.

Accordingly, the Court will deny the Motion for Summary Judgment with respect to all of Cordova's NMHRA claims.

## IV.  COUNT X IS ASSERTED ONLY AGAINST SALAZAR, AND HE IS ENTITLED TO QUALIFIED IMMUNITY AND SUMMARY JUDGMENT ON COUNT X -- VIOLATION OF CIVIL RIGHTS UNDER COLOR OF STATE LAW.

The Defendants assert that Count X of the First Amended Complaint is brought against Salazar, Trujillo, and Baxter in their individual capacities only.  See Motion for SJ at 13 (citing First Amended Compl. ¶¶ 67-69, at 12).  The Defendants argue that this count is based solely on the Individual Defendants' involvement in Cordova's discharge and that Cordova cannot establish that a constitutional violation.  See Motion for SJ at 15.  Citing to Polson v. Davis, 895 F.2d 705 (10th

Cir. 1990), the Defendants contend that a plaintiff may base a 42 U.S.C. § 1983 "claim on actions proscribed by Title VII when those actions <u>also</u> violate the United States Constitution."  Motion for SJ at 15 (emphasis original)(citing <u>Polson v. Davis</u>, 895 F.2d at 710).  The Defendants argue that Cordova fails to identify any clearly established constitutional right "allegedly violated by her termination."  Motion for SJ at 15.  At the hearing, the Defendants again emphasized that collateral estoppel also applies to Count X and that, because Judge Summerfield found that the NMTRD's actions were proper, the Individual Defendants could not have violated clearly established law. <u>See</u> Tr. at 19:3-12 (Kilgore).  Cordova conceded that the Court should dismiss Count X -- Violation of Civil Rights Under Color of State Law -- against the Individual Defendants because no clearly established law was violated.  <u>See</u> Tr. at 23:22-24 (Juarez).  When the Court clarified that Cordova believed that it should dismiss the § 1983 claim against the individuals, Cordova agreed that she did. <u>See</u> Tr. at 24:1-5 (Court, Juarez).

The Court first notes that, although the Defendants assert that Count X is brought against Salazar, Trujillo, and Baxter in their individual capacities, the First Amended Complaint indicates that Count X is asserted only against Salazar in his individual capacity.  <u>See</u> First Amended Compl. ¶¶ 63, 64, at 11 ("This count is brought against Defendant Phillip Salazar in his individual capacity only . . . .  In wrongfully discharging Plaintiff from her employment, Phillip Salazar violated, under color of the laws of the State of New Mexico, Plaintiff Dolores Cordova's due process and equal protection rights.").  Although Cordova alleges that Salazar violated her "due process and equal protection rights," First Amended Compl. ¶ 70, at 14, Cordova does not elaborate on that allegation and does not address the Defendants' argument that they are entitled to summary judgment on this count.  In her Response, Cordova does not discuss her § 1983 claim.  <u>See</u> Response

1-11.  The Defendants argue, in their Reply, that Cordova "fails to address, let alone refute, the

argument and supporting authority set forth in the Memorandum of Law regarding the Individual

Defendants' entitlement to summary judgment."  Reply at 10.  When a defendant asserts qualified

immunity at the summary judgment stage, the responsibility shifts to the plaintiff to meet a "heavy

two-part burden."  Medina v. Cram, 252 F.3d at 1128.  The plaintiff must demonstrate on the facts

alleged: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii)

that the right was clearly established at the time of the alleged unlawful activity.  See Riggins v.

Goodman, 572 F.3d at 1107.  Because Cordova has not met her burden to establish that the

Defendants violated her constitutional rights or that the right was clearly established, and because

Cordova concedes that the Court should dismiss Count X, see Tr. at 23:22-24 (Juarez), the Court

determines that Salazar is entitled to qualified immunity.  Accordingly, the Court finds that summary

judgment in Salazar's favor is appropriate.

**V.    THE COURT WILL GRANT SUMMARY JUDGMENT IN THE DEFENDANTS'
        FAVOR ON COUNT XI, BECAUSE CORDOVA CANNOT MAINTAIN A
        INDEPENDENT CAUSE OF ACTION FOR PUNITIVE DAMAGES.**

        The Defendants assert that, as a matter of law, Cordova cannot prevail on Count XI.  See

Motion for SJ at 17.  The State Defendant cite Mason v. Texaco, Inc., 948 F.2d 1546 (10th Cir.

1991), to support their argument.  See Motion for SJ at 17.  In her Response, Cordova does not

discuss Count XI -- Punitive Damages.  See Response 1-11.  At the hearing, Cordova agreed that

punitive damages cannot constitute a separate claim and that she was unaware of any claims against

the State on which she was entitled to punitive damages.  See Tr. at 24:16-25:1 (Court, Juarez).  The

Tenth Circuit, in Mason v. Texaco, Inc., held that

        a punitive damage claim is not an independent cause of action or issue separate from
        the balance of a plaintiff's case.  It is part and parcel of a liability determination and

-78-

does not have any independent being until a jury has decided, based on a preponderance of the evidence, that not only was a defendant's conduct negligent, it was gross, willful, wanton or malicious.

948 F.2d at 1554.  In Guidance v. Endodontics, LLC v. Dentsply Int'l, Inc., 791 F.Supp.2d 1026

(D.N.M. 2011)(Browning, J.), the Court held that the "character of the Defendants' conduct, which

is the basis of any punitive damages award, is neither distinct nor separable from the question of the

Defendants' liability." 791 F.Supp.2d at 1056 (citing Gasoline Prods. Co. v. Champlin Ref. Co., 283

U.S. 494, 500 (1931)).  Accordingly, the Court will enter summary judgment in the Defendants'

favor on Count XI.[22]

   **IT IS ORDERED** that the Defendants' Motion for Summary Judgment, filed August 18,

2011 (Doc. 44), is granted in part and denied in part.  The Court enters summary judgment in favor

of Defendants New Mexico Tax and Revenue Department, Phillip Salazar, Shannon Baxter, and

Lynette Trujillo on the claim under the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. §§ 621 - 634, in Counts IV and VIII.  The Court enters summary judgment in Salazar, Baxter,

and Trujillo's favor on the federal discrimination claims.  The Court also enters summary judgment

in the Salazar's favor on Count X.  Finally, the Court will enter summary judgment in the

Defendants' favor on Count XI.  The Court will deny summary judgment with respect to the federal

discrimination claims asserted against the New Mexico Tax and Revenue Department under Title

VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e- to 200e-17, and Americans with Disabilities

Act, 42 U.S.C. §§ 12201 to 12213.  The Court will also deny summary judgment with respect to the

claims asserted against the Defendants under the New Mexico Human Rights Act, N.M.S.A. 1978,

§§ 28-1-1 to -15.

-------------------

[22]If Cordova seeks punitive damages, she must plead and prove them as relief for each count, and not seek them in a separate, stand-alone claim.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Santiago E. Juarez
Albuquerque, New Mexico

    *Attorney for the Plaintiff*


M. Karen Kilgore
Cuddy & McCarthy, LLP
Santa Fe, New Mexico

    *Attorneys for the Defendants*